### J. & W. WILLIAMS *vs.* T. WOOD.

An *action on the case* for a false affirmation lies, where a certificate is given to an individual that he is an honest, industrious, reputable and otherwise good citizen, of good morals and habits, and that in the opinion of the person giving the certificate, the individual recommended would honorably endeavor faithfully to perform every engagement he should make in any matter of business or credit, and the person recommended on the strength of such certificate, obtains goods on credit, on its being shewn that the certificate was false, and that known to the person giving it.

Evidence that the person recommended was insolvent and worthless when the certificate was given, is admissible in such a case.

A defendant in such case is not at liberty to shew that the certificate was given for a specific purpose, e. g. to enable the person recommended to buy a garden spot at a particular place, and thus rebut the intent to enable him to obtain goods at another place. In cases of this kind, it is not necessary to shew an intent to defraud any particular individual; any one defrauded may maintain an action for the false representation.

The defendant might have shewn that he believed the representations made, and was himself the dupe of the artifices of the person obtaining the certificate.

Whether it was proper for the judge in charging the jury to say, that the insolvency and death of the person recommended was sufficient evidence that the debt contracted by him had not been paid, *quere ;* but the judge having added that the jury must be satisfied from all the testimony that the debt had not been paid, the court refused to grant a new trial.

A defect in the proof of a record of judgment at the trial, may be supplied by the production of an exemplification in bank.

THIS was an *action on the case* for a *false representation,* by means of which one Peter B. Cook was enabled to obtain *credit,* and the plaintiffs were induced to sell goods to him. The suit was tried at the Cayuga circuit in April, 1834, before the Hon. DANIEL MOSELEY, one of the circuit judges.

In November, 1830, Cook applied to the plaintiffs, druggists and grocers in *Utica,* to sell him goods on *credit,* and produced a letter of recommendation, signed by the defendant and four other persons, in these words: *"Auburn,* Nov. 24, 1830. We, the undersigned, do very cheerfully certify that we are personally acquainted with Peter B. Cook, of this village ; that we esteem him an honest, industrious, reputable and otherwise good citizen, and of good morals and habits ; and we are of

opinion that he would honorably endeavor to the best of his power faithfully to perform every engagement he should make in any matter of business or credit." Cook was an entire stranger to the plaintiffs, and solely upon the strength of the recommendation produced by him, they sold him goods to the amount of near $300, and took his notes therefor. In February, 1831, Cook paid one of his notes and obtained additional goods of the plaintiffs, *on credit*, to the amount of about $400. In October term, 1831, the plaintiffs commenced a suit against Cook, declaring against him for *goods sold and delivered*, and also on the *common money counts*. Cook gave a *cognovit* for $575,82, on which judgment was entered, and a record signed and filed 28th December, 1831. On 2d January, 1832, an execution was issued on the judgment, directed to the sheriff of Niagara, in which county Cook then resided, returnable on the 14th of the same month, which was returned *nulla bona*. The record of judgment was produced, but as it was not proved to have been *filed* in a clerk's office of this court, its admission as evidence was objected to, which objection was overruled. The record was also objected to, on the ground that the judgment did not appear to have been rendered on the notes given by Cook, nor for the price of the goods obtained by him on the strength of the recommendation; which objection was also overruled. The plaintiffs read in evidence a letter addressed by their attornies to the defendant and the other signers of the letter of recommendation, dated 20th September, 1832, adverting to the letter of credit, and urging them to pay the debts contracted by Cook, and an answer to such letter, received from the *defendant* in this cause, in these words: "Auburn, Oct. 1, 1832. Any gentlemen fools enough to trust a man with goods on such a recommendation as Mr. Cook carried from me and others, and can find a lawyer fool enough to advise a suit on that recommendation, may sue and be ———." The reading of the letter of the plaintiffs' attornies in evidence was objected to, but the objection was overruled. It was proved that in April, 1832, the defendant was present at a trial when a witness testified that Cook, at the time he obtained the goods of the plaintiffs, *had no credit*, and the defendant then remarked that Cook could not get

trusted for a glass of beer.   There was also other evidence of his lack of credit, which was received, although objected to.   A number of witnesses who knew Cook in 1830, testified that he was a poor man, not engaged in any regular business, but occasionally sawed wood, worked in a garden, and sold vegetables ; he did not pretend to own any property, his son supported his family, and that he was not industrious, or of good habits or morals, but was a frequenter of groceries and occasionally got drunk.   On the other hand, several witnesses spoke more favorably of him, and some even gave him a good character.   The defendant offered to prove that the *recommendation* signed by him and the others was given to enable Cook to buy a small piece of ground at Oswego, to cultivate as a garden, and to carry on gardening in the vicinity of that village ; which evidence was objected to and rejected.   Cook died previous to the trial.   At the date of the letter of credit the *defendant* resided in the same village with Cook.   The judge charged the jury that the plaintiffs, to entitle themselves to a recovery, were bound to show that the defendant had recommended Cook to the plaintiffs, and that on the credit of that recommendation they had parted with their goods ; that the recommendation was false, and that the defendant knew it to be so, and that in consequence of the premises the plaintiffs had sustained damage.   The counsel for the defendant asked the judge to charge that it was incumbent on the plaintiffs to prove that the debt contracted by Cook had not been paid, and that proof of Cook's insolvency was not sufficient, and did not dispense with proof of non-payment. The judge declined so to charge, but instructed the jury that it must appear that the debt had not been paid, observing that he would not say that proof of Cook's insolvency and death was sufficient evidence of non-payment, but that it was proper to be taken into consideration ; that the jury must be satisfied from all the testimony, before they found a verdict for the plaintiffs, that the debt had not been paid, and unless so satisfied they could not say that the plaintiffs had sustained damage.   The jury found a verdict for the plaintiffs for $765,65.   The defendant on a case made, asks or a new trial.

*P. Bronson*, for defendant.

*C. P. Kirkland*, for plaintiffs.

*By the Court*, SAVAGE, Ch. J. Several questions were raised upon the trial. An original judgment record, from the clerk's office Utica, was introduced without being proved to be a record by the oath of the clerk or his deputy, which was irregular, but the irregularity is cured by the production upon the argument of an exemplification of the record.

It was objected that it should be shown that the judgment obtained upon the notes given for the goods purchased by Cook upon the credit of the recommendation, or for the price of the goods. It was sufficiently shewn that the judgment was for the goods purchased. Whether the notes had been cancelled, was a question which did not properly arise upon this trial. In the original action against Cook, had it been contested, the plaintiffs would have been compelled to produce and cancel those notes, before they would have been permitted to recover for the goods themselves; but between these parties it could not be material.

The letter of the plaintiffs' attornies was properly admitted, as without it the pertinency of the defendant's letter could not be so well appreciated.

The gist of the action is damage sustained by the plaintiffs, arising from the fraudulent act of the defendant. The mere production and proof of the recommendation did not establish the fraud, but by shewing the falsity of the recommendation, the inference of a fraudulent intent almost necessarily arose. Why should the defendant represent that Cook was an industrious, reputable citizen, of good morals and habits, when he must have known that he was an idler about the streets and groceries, intemperate, and occasionally drunk? Why express an opinion that he would endeavor to perform any engagement of business or credit, when he was a man who had no pecuniary means, followed no business, and could not, as defendant admitted, when the recommendation was given, get trusted for a glass of beer? The plaintiffs had reason from the

recommendation to believe that Cook was a man who might safely be trusted in so far as personal integrity was concerned. It is inferrible from the paper itself, that he had little or no property; but if he had possessed the qualities imputed to him, the only risk his creditors would have run would have been misfortunes which might befal him. It was proper therefore to receive evidence of the fact that Cook was insolvent and worthless when the recommendation was given, and that the defendant knew it.

The only objection which struck me as having any force, was the rejection of the evidence offered to show the true object of signing the recommendation to be to enable Cook to buy a small piece of ground at Oswego, to cultivate as a garden; but admitting this to have been the object, the proof itself would have shown that it was intended to enable Cook to obtain credit, when the defendant said he could not be trusted (at Auburn, where he was known,) for a glass of beer. This therefore would not help the defendant. It is not necessary to show that the object was to defraud the plaintiffs in particular. If the object was to defraud any one, the action is well sustained by whoever happens to be defrauded by the false recommendation. Had the defendant offered to show that Cook was such a person as he had represented him to be, that would have been proper evidence. So he might have shown that he really believed what he had stated of Cook, and had himself been imposed upon as to the character and habits of Cook, and his capacity to fulfil his contracts. He would then have come within the case of *Haycraft* v. *Creasy*, 2 *East*, 92, where the defendant had been the dupe of the artifices of the person recommended. No such evidence was offered in this case, and probably could not be offered, as may be inferred from the absence of such proof, as well as from the evidence produced by the plaintiffs. In the case of *Allen* v. *Addington*, 7 *Wendell*, 22, after an examination of some of the cases which had been decided, several propositions were deduced as resulting from the decisions, and which have received the sanction of the court for the correction of errors. It is there said, that " It is not essential that the person making the false affirmation is to be benefitted by the fraud. Nor is it

necessary that the intention should exist to defraud the plain-
tiff in particular. If a person intending to defraud somebody
gives a general recommendation of credit, to an insolvent per-
son, any one who sustains damage by reason of such recom-
mendation is entitled to an action for such damage grounded
upon the fraud." This principle sustains the present action,
and justifies the judge in rejecting the evidence offered. It
is no apology that the defendant intended to defraud some
person at *Oswego* and did not intend to defraud any one at
*Utica.* The intention to defraud is not disproved.

If I am right thus far, then the charge of the judge was
strictly correct. He stated in effect that the plaintiffs, must
show that they had sustained damage by reason of the recom-
mendation; that the recommendation was false, and that the
defendant knew it was so when he gave it. Whether he
was right also in saying that the insolvency and death of
Cook were sufficient evidence for the jury, it is not necessary
to decide, for he added that they must be satisfied from all
the testimony that the plaintiff's debt had not been paid.

New trial denied.