## FRY a. BENNETT.

*New York Superior Court; General Term, February, 1855. Again March, 1855.*

DEPOSITIONS DE BENE ESSE.—VINDICTIVE DAMAGES.

What is *satisfactory proof* of the inability of a witness to attend a trial, for the purpose of rendering his deposition taken *de bene esse*, admissible.

In an action against the proprietor of a newspaper for libel, an article published in his newspaper, if sufficiently connected with the defendant by proof, may be read in evidence to show the circulation of the paper, and the proprietor's income from it.

In an action for libel where actual malice has been proved, the jury are at liberty to give vindictive damages.

---

After a new trial is ordered, for error in admitting a deposition upon insufficient proof that the witness was absent from the State, a motion for leave to supply such proof and thus cure the defect, will not be granted.

I. *February.*—Motion for a new trial.

This was an action brought by Edward P. Fry, manager of an Italian Opera Company, against James Gordon Bennett, editor and proprietor of the New York Herald, for the publication of twelve successive libels upon the plaintiff in his private character, and as manager of the opera.

A demurrer to the answer of defendant was interposed, upon which the plaintiff had judgment (5 *Sand.* 54), the usual leave to amend being given.

An amended answer having been put in, the cause came on to be tried before Ch. J. Oakley and a jury, on Dec. 5, 1853, the trial continuing eight days.

In the course of the trial the counsel for the plaintiff called as a witness, Sheridan Corbyn, who testified:—"I am acquainted with Maurice Strakosch; he is in Cincinnati, Ohio." On cross-examination, he said, "I last saw him six weeks ago, here; his wife told me he had gone to Cincinnati. I inquired for him this morning. She did not tell me when he went. That is all the knowledge I have."

19

The counsel for plaintiff then offered to read the deposition of Maurice Strakosch, which had been taken *de bene esse,* prior to the trial. Defendant's counsel objected on the ground that the absence of Strakosch had not been sufficiently proved.

The objection was overruled and the deposition read, under exception.

The counsel for plaintiff also, in the course of the trial, offered to read in evidence an article from the New York Herald, of Dec. 16, 1851, for the purpose of showing the circulation of the paper in 1848 and 1849, in which years the alleged libels were published, and its income. The counsel for defendant objected, on the ground that the defendant was in no way connected with it by proof, and that it was irrelevant. The judge overruled the objection and the defendant's counsel excepted. The article was then read.

The counsel for defendant requested the judge to charge the jury:

That if they should find any ground in this case for giving damages to the plaintiff against the defendant, their verdict should be for such sum only as would compensate the plaintiff for the injury which he has sustained; and that the jury were not at liberty to give to the plaintiff any further sum by way of punishment of the defendant, or by way of vindictive damages, or as smart money.

His honor declined to give this instruction. Upon the question of damages his charge was as follows:

"The plaintiff here has not proved any specific loss in regard to his business as an opera manager; indeed it would be very difficult to prove that any person did not go to the opera, because the plaintiff's course had been criticised and animadverted upon by the defendant.

But in estimating the damages, you are to look to the character of the libels and the business of the plaintiff, not giving way to any feeling of prejudice, but examining the whole matter like business men, and so drawing your inference as to damages. It has been contended by the counsel for the defendant, that the jury are not at liberty to go beyond what are called actual damages. As I understand it, that has not

been the course pursued by the courts in this State heretofore. What it may be hereafter, I cannot say—in regard to this matter, it strikes me that there must be some qualification to that rule; because the consequence of it would be, that in all cases wherein no specific injury could be proved, the damages would be merely nominal. If the jury in this case were not allowed to form any judgment as to damages, except so far as the plaintiff proved that he sustained an injury in dollars and cents, they could have no basis on which to stand and their verdict would be merely nominal. I have always held the rule in such cases to be, that the jury could look at the whole character of the transactions, and that they could take into consideration all the proof before them of any malicious and actual intent to injure the plaintiff. General malice against the plaintiff may not be proved; but actual malice in making the publications complained of, may be proved. Malice, so far as the law requires it to exist to sustain the action, is always implied, because every man who slanders a neighbor, or who publishes a libel against a neighbor, the law presumes to do so from malicious motives. There may be a different rule as to damages, where there is actual malice existing; because, if a man by mistake, publish a libel, the law would fix malice upon it only so far as to make him responsible; but it would be a different thing, if instead of publishing it by mistake he did so with a view to injure the plaintiff. It is contended that there is proof of that kind bearing on the defendant, and it is derived altogether, I understand, from the deposition of a German witness, Strakosch. You will examine that evidence very carefully, and see whether, taking his examination in chief and his cross-examination, reliance can be placed upon the representation he makes, that Mr. Bennett declared his intention to finish, or otherwise injure and break down the plaintiff. If it should come up to that, then the defendant stands before us as a man who deliberately undertook to do an injury, and if he fail to prove his allegations to be true, he cannot escape with nominal damages. The whole question of damages is entirely within your sound discretion. If you find for the plaintiff, you will assess such damages as the occasion requires."

The jury having found a verdict for the plaintiff for $10,000 damages, the defendant moved, at special term, for a new trial. His motion was denied *pro forma ;* he appealed to the general term.

*D. D. Field, J. Townsend* and *B. Galbraith*, for appellant.

*A. L. Jordan* and *F. R. Sherman*, for respondent.

By the Court.—Bosworth, J.—The points most strenuously insisted upon in support of the motion for a new trial, are :—

First. That neither the matter stated in the eighth, nor that stated in the eleventh cause of action, and alleged to have been published by the defendant, is libelous. And that damages having been assessed generally on all the causes of action set forth in the complaint, the judgment must be reversed.

Second. That the deposition of Strakosch was improperly admitted in evidence.

Third. That it was erroneous to allow the plaintiff to give evidence of the income realized by the defendant from the publication of the New York Herald.

Fourth. That in a civil action for a libel, a jury have no right to give punitive damages, or damages by way of punishing a defendant, for a deliberate purpose to injure the plaintiff, wound his feelings, and subject his character to reproach ; and that the court erred in refusing to charge the jury that damages could not be given for such a cause.

Fifth. That the damages are excessive, and that the defendant should have a new trial on that account, if no other.

We understand the court to have decided, when this case was formerly before the general term, that the matter set forth in the eighth and eleventh counts, and in each of them, and alleged to have been published by the defendant, is libelous. (Fry *v.* Bennett, 5 *Sand. S. C. R.*, 54, 56, 75).

Of either count, we deem it sufficient to say that, assuming the extrinsic facts which are averred to be true, the words published are susceptible of the construction and meaning imputed to them by the pleader. The jury having found these facts to exist, and that the words were used in the sense im-

puted to them, the judgment cannot be disturbed merely on the idea that either of these counts is bad in substance.

Strakosch was examined *de bene esse* as a witness in this action, and the plaintiff offered his deposition in evidence, after having proved by Sheridan Corbyn that he knew Strakosch, and last saw him in this city about six weeks previously. That on the morning of that day he called at the house of Strakosch, and the wife of the latter told him that Strakosch had gone to Cincinnati. The defendant objected to the reading of the deposition of Strakosch, on the ground that his absence had not been proved. The court admitted the evidence, and the defendant excepted.

The statute on the subject declares that such a deposition may be read, " after it shall have been satisfactorily proved that such witness was unable to attend such trial or assessment of damages, personally, by reason of his death, insanity, sickness or settled infirmity, or that he has continued absent out of this State, so that his attendance at such trial or assessment of damages could not be compelled by the ordinary process of law." The right to read this deposition depends, in this case, upon the question, whether it was "satisfactorily proved that Strakosch had continued absent out of the State, so that his attendance at the trial could not be compelled by the ordinary process of law." By satisfactory proof, must be meant evidence recognized by law as competent in its nature to prove the fact, and sufficient to *prima facie* establish it.

The witness, Corbyn, does not state where he lived, how often he had been in the habit of seeing Strakosch, nor that his relations with him, nor that his own business was such that he would have been likely to have seen him had he been in the city during the two or three weeks preceding the trial. He does not appear to have even inquired when Strakosch left for Cincinnati. For aught that the wife of the latter is testified to have said, he might as well have left the previous day as before the cause was noticed for trial. The statute requires proof of more than the actual absence of the witness from the State on the day the action is tried. Such a continued absence must be proved, that ordinary diligence to procure his attendance by process of law would be ineffectual. The evidence to

give a right to read the deposition must be such as would make it erroneous to reject the deposition. Giving to the declarations of Strakosch's wife the fullest effect, no one can conjecture from it when Strakosch left the State. No good reason can be assigned for receiving her declarations as proof, when she might have been called to testify to the fact, if it was as she is represented to have stated it. The statute, by requiring the fact to be " satisfactorily proved," should not be construed to admit of mere hearsay evidence, when direct and competent evidence appears to have been as easily attainable.

In Guyon v. Lewis, 7 *Wend.*, 26, the deposition was taken and cause tried before the existing statute was enacted. (*Id.* 28). The deposition was taken in August, 1828, and the cause was tried in January, 1829. The plaintiff testified to the court that the witness, immediately after being examined, told the plaintiff he was going up the North river, and expected to leave the State ; that previously he was in the habit of seeing him, but had not seen him since. (*Id.*, 28). He was a transient person ; had no fixed habitation anywhere, and was a journeyman carpenter, seeking employment. That was held sufficient. In Jackson v. Rice, 3 *Wend.*, 180, a deposition of Richard Harrison, taken under the act to perpetuate testimony, (1 *Rev. Laws*, 455), was offered in evidence, and rejected. The preliminary proof was that of a witness who proved that Mr. Harrison was between seventy-five and eighty years of age, and that the witness believed, from the ill state of his health, and the infirmities consequent upon his advanced age, he was unable to attend at the circuit as a witness. He had not, however, seen Mr. Harrison in several years, and did not personally know the state of his health. The deposition was rejected. The court said, " for aught that appeared, he might, although eighty years of age, have attended the court. At all events, the judge was not bound to presume him unable to attend. The plaintiff should not rely upon presumption where it was his duty to produce proof."

In Jackson v. Perkins, 2 *Wend.*, 308—315, a deposition of Mrs. Vischer, taken under the same act, was offered in evidence. It was allowed to be read, on a stipulation of the plaintiff's counsel that a judgment of nonsuit might be entered

if the Supreme Court, on a case made, should be of the opinion that the deposition ought not to have been received. The evidence of her inability to attend was, that she was over seventy-four years of age; and one of the witnesses testified that from his knowledge of her situation and infirmities, he believed she could not endure a journey from Albany to Ogdensburg, without the most serious injury to her health. This was held to be sufficient. (See Clarke *v.* Dibble, 16 *Wend.*, 601 ; The People *v.* Hadden, 3 *Den.*, 225). I think the spirit of these decisions requires legal proof, as contradistinguished from mere hearsay evidence or belief, especially when it is apparent that it is as easily attainable as the inferior proof which may be offered. The mere declaration of a third person should not be received as competent, and certainly not as satisfactory proof of any fact, when such third person can be as easily procured to testify to the fact as the one offered to prove his declaration respecting it. In this case, all the proof that was given of the continued absence of Strakosch from the State was the declaration of his wife that he had gone to Cincinnati, (not saying when he went), and that the witness had not seen him in six weeks. (Robinson *v.* Marks, 2 *Mood. & Malk.*, 375, and 1 *Campb. R.*, 172).

Allowing such testimony, would furnish opportunity for collusion, and violate the rule that mere hearsay evidence is inadmissible, without the slightest necessity for it, in a case in which it was just as feasible to call the party who made the declaration as some one who heard it made. Testimony by his wife, that Strakosch left the city, avowedly to go to Cincinnati, stating when, that she had not seen or heard from him since, or had received letters from him bearing the Cincinnati post office stamp, would undoubtedly be satisfactory proof. We are of the opinion, that on the evidence given, the plaintiff was not entitled to read the deposition.

The defendant is therefore entitled to a new trial, on account of the admission of this deposition in evidence. This conclusion renders it unnecessary to pass upon any of the other questions argued on the appeal, except such as may arise upon a second trial, and in respect to which the ruling of the court on such trial may properly be required.

A New York Herald, of the date of Dec. 15, 1851, purporting to state its average daily circulation from 1842 to 1851, inclusive, and the annual receipts for it in 1835, the first year of its existence, and also in the year 1851, was offered in evidence " for the purpose of showing the circulation of the Herald in the years 1848–49, and the income of the office."

It was objected to, " on the ground that the defendant was in no way connected with it by proof, and that it was irrevelant." The objection was overruled, and the defendant's counsel excepted. It was then read, " to show the circulation of the paper and its income." The proof sufficiently connected the defendant with that number of the Herald. The paper was " relevant," and was competent evidence to show the circulation of the Herald, and of the extent to which the libelous matter had been published. So much of the extract read, as related to this point, was proper evidence.

The objection was not taken that the passage relating to the receipts of the Herald should not be read, but the objection was to the whole article. In not attempting to discriminate between the different points of it, the objection seems to have assumed, that as a whole it was not admissible for any purpose, and the ground of objection taken, was that it was irrelevant.

Whether the part relating to the receipts of the office, if specially objected to, should have been excluded, or whether its admission can be seen to have so prejudiced the defendant that, treating this as a motion for a new trial on a case, as well as an appeal from the judgment, a new trial should be granted, will depend upon considerations connected with the charge on the subject of damages, and exceptions taken by the defendant to the refusal of the court to charge on that branch of the case, as requested.

The defendant requested the court to charge the jury, " that if the jury should find any ground in this case for giving damages to the plaintiff against the defendant, their verdict should be for such sum only as would compensate the plaintiff for the injury he has sustained therefrom, and that the jury are not at liberty to give to the plaintiff any further sum, by way of punishment of the defendant, or by way of vindictive damages, or as smart money." The court refused so to charge, and

the defendant excepted. It is not contended that the terms of the charge, as given, are particularly exceptionable.

The jury were instructed that the plaintiff had not proved any specific loss to his business as an opera manager. "In estimating the damages, they were to look at the character of the libels and the business of the plaintiff, not giving way to any feelings of prejudice, but examining the whole matter like business men, and so drawing their inference as to damages. That the court had always held the rule in such cases to be, that the jury could look at the whole character of the transactions, and that they could take into consideration all the proof before them of any malicious and actual intent to injure the plaintiff; that it was contended the evidence of Strakosch proved actual malice, and an intention to injure the plaintiff and break up his business. They would examine this evidence carefully, and determine whether it should be credited, and whether they could ' rely upon the representations he makes, that Mr. Bennett declared his intention to finish, or otherwise injure and break down the plaintiff.' If it should come up to that, then the defendant stands before us as a man who deliberately undertook to do an injury ; and if he fail to prove his allegation to be true, he cannot escape with nominal damages. The whole question of damages is entirely within your sound discretion. If you find for the plaintiff, you will give such damages as the occasion requires."

If the charge, as given, was not erroneous, and was as favorable to the defendant as he could properly require, then the question arises whether there was any error in refusing to give the instruction sought, or whether the not giving of it may be reasonably inferred to have been a substantial prejudice to the defendant. I state the latter alternative, because the action is before us upon a case, as well as upon exceptions to the decisions of the court.

The case does not show nor state any thing to legally justify the inference that the plaintiff urged the jury to apply any other consideration in estimating the amount of damages than those which the charge, as given, approved, or insisted to the court that any instructions should be given, variant from those which the defendant especially asked the court to give, unless

it is to be inferred from the fact of the request itself. I cannot believe that when a charge, unexceptionable in itself, has been given, it is error not to go further, and charge a proposition, which, as an abstract one, is sound, when the converse of it has neither been asserted by the adverse party nor its application invoked to the disposition of any part of the case.

Unless the defendant, in his request to the court to charge that in addition to compensating the injury, the jury were not at liberty " to give any further sum by way of punishment of the defendant, or by way of vindictive damages, or as smart money," used these three alternatives as synonymous expressions, then it was not erroneous in any view to charge as requested, if " vindictive damages," or damages " as smart money," could properly be given. Unless his proposition as an entire one was sound, it was not error to refuse to instruct the jury to adopt and be governed by it. We do not understand the learned counsel for the defendant to deny that in estimating damages in an action of libel, the jury are not only to consider and compensate any actual and pecuniary loss, but if the injury was wilful or intentional, they may consider the mental sufferings of the plaintiff, the circumstances of indignity and contumely under which the wrong was done, and the consequent public disgrace to the plaintiff, together with any other circumstances belonging to the wrongful act and tending to the plaintiff's discomfort.

But he insists that when the jury, in the exercise of a sound discretion, have arrived at what, in their judgment, is a proper compensation—having reference to all these circumstances—their duty and power end ; and they can add nothing to such compensation to punish the defendant for the public good, by deterring him from doing similar wrongs to the same plaintiff or to others.

One consideration naturally suggests itself upon the mere statement of these propositions. A plaintiff who has been injured by a tort or wrong of a defendant, is entitled in all cases to his actual damages. If these include compensation for mental suffering, and a consideration of the circumstances of indignity under which the wrong was done, the public disgrace inflicted, and other actual discomfort produced, the plaintiff should be compensated at all events, whether the wrong was

wanton, or was done believing the charges published to be true.

In either case, the mental suffering must be as great, the circumstances of apparent indignity are the same, and his disgrace will be as absolute and mortifying in the one case as the other, until his character has been vindicated by a verdict establishing the falsity of the calumnies charged against him. If such considerations are not constituent elements of damage, and if a person who has been injured in these respects, is not to be compensated by damages, as a matter of strict legal right, and if a defendant is to be exonerated from such damage, when the injury was not wanton, and is to be subjected to them when it was, then such damages may not inaptly be termed punitive, or vindictive, or damages given as smart money.

If the right to them does not result from the fact of the wrong, and the suffering and disgrace caused by it, then they are not given to compensate for such injuries, as a matter of course, merely because he wrongfully caused them, but because he caused them from a deliberate purpose to inflict them, without anything to palliate or mitigate his conduct. Logically speaking, such damages when given, are awarded full as much to punish a defendant as to compensate a plaintiff; and they are given as much by way of smart money, as because the plaintiff is entitled to them as an indemnity, inasmuch as they are given in consequence of the wantonness of the wrong, and not merely on account of the sufferings, discomfort and disgrace caused by them to the plaintiff. A reference to some of the cases will show that the decisions in the courts of this State, on this point, have been uniform. Tillotson v. Cheetham, 3 *Johns. R.*, 56, was an action for a libel. No plea was put in, and a writ of inquiry was executed before Ch. J. Kent and a jury. The judge charged the jury, that the case " demanded from the jury exemplary damages; " * * * * " that he did not accede to the doctrine that the jury ought not to punish the defendant, in a civil suit, for the pernicious effect which a publication of this kind was calculated to produce in society." The defendant moved to set aside the inquest, and insisted that " the charge of the judge was incorrect in stating that the plaintiff was entitled to exemplary

damages, on account. of the injurious tendency of such publi-
cations to the community.   In a private action, the party can
recover only for the private wrong; he has no concern with
the public. offence, for which the defendant must atone on the
indictment."

The motion was denied.   Kent, Ch. J., after citing cases,
which, in his view of them, sanctioned the doctrine contained
in this part of the charge, remarks, that " it is too well. settled
in practice, and is too valuable in principle to be called in
question."   The report of the case states, that " Thompson, J.,
and Van Ness, J., declared themselves to be of the same opin-
ion."   Spencer, J., said, that " in vindictive actions, such as
for libels, defamations, assault and battery, false imprisonment,
and a variety of others, it is always given in charge to the
jury that they are to inflict damages for example's sake, and by
way of punishing the defendant."

This decision was made in 1808, and seems to be a direct
adjudication of. the question presented in the request to charge.

In Hoyt *v.* Gelston, 13 *Johns. R.*, 141, 151, which was an
action of trespass for seizing a vessel, &c., the plaintiff's coun-
sel admitted " that the defendants had not been influenced by
any. malicious motives in making the seizure; and that they
had not acted therein with any view or design of oppressing or
injuring the plaintiff.   The presiding judge held, that such
admission precluded the plaintiff from claiming any damages
against the defendants, by way of punishment or smart money;
and that after such admission, the plaintiff could recover only
the actual damages sustained, and he gave that direction to the
jury."

In Wory *v.* Jenkins, 14 *Johns. R.*, 352, being an action of
trespass for beating the plaintiff's mare, by reason whereof she
died, the mare was proved to be worth $50 or $60.   The judge
told the jury the plaintiff was entitled to recover the value of
the mare ; and " if they believed as he did, that the defendant
had whipped her to death, it was a case in which, from the wan-
tonness and cruelty of the defendant's conduct, the jury had a
right to give smart money."   They found a verdict for $75.   A
motion was made to set aside the verdict, for excessive damages
and misdirection of the judge.   The court said, " We think

the charge of the judge was correct; and we should have been better satisfied with the verdict if the amount of damages had been greater and more exemplary."

In Woodward *v.* Paine, 15 *Johns. R.*, 494, the same instruction was given to the jury, and the correctness of the decision affirmed.

In Root *v.* Ring, 4 *Wend.*, 113, which was an action for a libel, the presiding judge, after giving his views of the evils of a bitter and unmitigated aspersion of private character, through the medium of newspapers, stated in his charge, that "in a fitting case a jury could render no more meritorious service to the public than in repressing this enormous evil. It can only be done by visiting with severe damages him who wantonly and falsely assails the character of another through the public papers." No exception was taken to this part of the charge.

The chancellor, in his opinion, stated the rule to be, that "the jury may not only give such damages as they think necessary to compensate the plaintiff for his actual injury, but they may also give damages, by way of punishment, to the defendants. This is usually denominated exemplary damages, or smart money."

In Fero *v.* Ruscoe, 4 *Comst.* 162, which was an action for slander, the judge charged, that "the failure to establish a justification was, in law, an aggravation of the slander, and that the defendant was not entitled to any benefit from the evidence given, to make out a justification, if the jury believed that it failed to make out a full justification." An exception was taken to this charge.

The court of appeals held the charge to be correct, and said that an attempt to justify, though honestly made, was an aggravation of the original wrong. If the defendant makes a mistake, it is at his own peril.

In Allen *v.* Addington, 11 *Wend.*, 380, an action for falsely representing the credit of one Baker, whereby the plaintiff was induced to sell him goods to the value of $2,000, the judge instructed the jury that "if they should consider the plaintiff entitled to recover, he would be entitled not only to the amount of the goods sold, with the interest of the same, but also to exemplary damages." The defendant excepted to the charge,

and the jury found a verdict for the plaintiff for $2,564 84 damages.

When the cause was before the Supreme Court, for a new trial, that court held that the rule of damages stated to the jury was not objectionable. A writ of error was brought to the court for the correction of errors. (7 *Wend.*, 26, 199).

The judgment was reversed on the sole ground that the second count was bad in substance; but the third count being deemed sufficient after verdict to sustain the judgment, the record was remitted to the Supreme Court, with liberty to the plaintiff to apply there to amend the *Postea*, so as to apply the verdict to the third count, (the first count not having been proved), and to render judgment thereon; and if such leave was refused, to apply for a new trial, and for liberty to amend his declaration before the awarding of a *venire de novo*. (11 *Wend.*, 421). Application was made to the Supreme Court for leave to amend the *Postea*, and enter judgment on the third count, which was granted. (12 *Wend.*, 215).

This seems to be a direct affirmance of the proposition, that in an action of tort, although it affects property only, and the actual damages can be ascertained, exemplary damages may be given, in a case in which the tort resulted from a purpose to deliberately and intentionally injure the plaintiff. Although the doctrine that exemplary or vindictive damages may be given in actions of tort, when the wrong was wantonly or maliciously committed, has been uniformly acted upon at *nisi prius*, and sanctioned both by the Supreme Court and the court of last resort of this State, its justice or any direct authority for it, has recently been denied in Dain *v.* Wykoff, 3 *Seld. R.*, 193, by an eminent judge of the Court of Appeals.

We have also been favored with the opinion of Mr. Justice Jewett, and that of Mr. Justice Mason, in the case of Taylor, Hale and Murdock *v.* Church. That was an action for libel. The judge charged, that "If the jury were satisfied that the defendant was influenced by actual malice or a deliberate intention to injure the plaintiffs, they might give such further damages (in addition to a full compensation for the injury) as are suited to the aggravated character which the act assumes, and as are necessary as an example to deter from the doing of

such injuries." To this there was an exception. Mr. Justice Jewett held this part of the charge to be correct; and Mr. Justice Mason held it to be clearly wrong. A note of the reporter states, that five members of the court did not express a concurrence with either judge on the question now under consideration. All the judges agreed with Mr. Justice Jewett in granting a new trial, on another ground, stated in his opinion. How many of the judges were present on the argument of that case, or took part in the decision of it, the reporter's note does not state.

If the Court of Appeals has not directly affirmed the contrary of the instruction sought on the trial of this action, neither has it affirmed that such an instruction would be proper. To instruct a jury, as the judge before whom this action was tried was requested to charge the jury in this case, would be directly in conflict with the law, as it has been uniformly stated to juries, in such actions in this State, from the earliest period of its judicial history, so far as the practice is evidenced by reported decisions.

Under such circumstances, we do not feel at liberty to disregard a rule so long and uniformly held, and directly affirmed by the Supreme Court of this State, half a century ago, and if not expressly decided, at least clearly approved by the court for the correction of errors, in Allen v. Addington, and in Root v. King. (See Day v. Woodworth, 13 *How. U. S. R.*, 371, 372; Austin v. Wilson, 4 *Cush. R.*, 273, and the cases cited by counsel in Randall v. Stone, 1 *Selden*, 18).

If in actions of libel and slander, and in other actions of tort for injuries to the person, or to character, damages may be given when the act was wanton or actually malicious, which would not otherwise be allowed, although in each case the actual pecuniary injury, the extent of personal suffering, the attendant circumstances of contumely and indignity, and the public disgrace, be precisely the same in the one case as in the other, it is of no practical consequence whether such damages be termed punitive, vindictive or compensatory. By whatever name they may be designated, they are manifestly given on account of the wantonness or malice of the defendant's conduct, and the very rule which determines whether they may

be given or must be withheld, has no real principle on which it can stand, if it be conceded that they cannot be given by way of example, or to punish atrocity of conduct.

While such damages are allowed to be recovered, it cannot be an indifferent consideration whether a defendant is rich or poor. Damages which would be exemplary, when inflicted upon a person in moderate circumstances, would be trivial, and in no practical sense exemplary, when imposed upon a person whose property and income were very much larger.

Who the parties to a controversy of such a character as this, are, what are their pursuits and positions, and what the influence resulting from them by a libel published by either of the other may be, are not unimportant parts of the transaction itself. Such considerations sometimes give to a libel and slander all that it has of a substantial interest or importance ; and sometimes they are of such a character, that however gross the terms of the libel, they alike fail to give respectability to the action, or excite interest as to the defence.

In considering the question raised by the exception to the refusal to charge as requested, we have not referred to the decisions of the courts of any other State. We have forborne to make such a reference, for the reason that the decisions of the courts of this State have been uniform, and reach back to a period so remote, that we do not feel at liberty to treat the question as an open one in this State, notwithstanding the doubts recently expressed by some members of our Court of Appeals in relation both to the justice of the rule, and the existence of any authority by which it can be upheld.

A new trial is granted, on the ground that the deposition of Strakosch was improperly admitted. A new trial being granted on that ground, it must be with costs, to abide the event of the action.

HOFFMAN, J.—As I concur with my brethren in their conclusions upon every point of the cause, and consider the reasons assigned by Mr. Justice BOSWORTH as sufficient to sustain such conclusions, it might appear needless to add anything to the opinion delivered. But the leading question in this case— the right to give vindictive damages in a libel suit where actual

malice is found by the jury—receives great importance from the opinions of some judges of the Court of Appeals, which question that right. The doubt thus thrown upon a rule which I have received from my professional teachers as unquestioned, irreversible law, has made me feel it a duty to add something to the reasoning and authorities upon which the opinion of my brother is founded. The twenty-ninth exception taken by the defendant's counsel upon the trial, involves the point in controversy.

The judge was requested to charge as follows :—"That if the jury should find any ground for giving damages to the plaintiff, their verdict should be for such sum only as would compensate him for the injury he had sustained therefrom ; and that the jury were *not* at liberty to give him any further sum by way of punishment of the defendant, or by way of vindictive damages, or as smart money."

The observations of my brother Bosworth, in contrasting this request with the charge actually made, and his conclusion that the refusal is not, when the whole is considered, ground of exception, appear to me unanswerable. But I am desirous of expressing my own opinion upon this great point, when placed in the strongest form in which it can be presented for the defendant. I shall, therefore, consider it as if the judge had expressly charged the converse of the proposition to be the law, and had employed the language of the request, varying it only by omitting the word "not" in the latter part, and inserting the same word after the word "should" in the first clause. In determining whether this would be ground of exception, the court is justified in connecting it with portions of the charge actually made, pertinent to the same question. It may, therefore, be viewed in conjunction with the instruction, "that an actual malicious intent in making the publication might be proven, and the jury was to judge by the evidence whether such an intent was made out. If such was the case, and the defendant had not proven his allegations to be true, he should not escape with nominal damages."

I shall treat the question, then, as the counsel insists it must be treated, under the refusal and the actual charge ; and shall suppose that the judge had added, after what I have quoted

from the charge, the converse of the proposition contained in the request, as I have stated it.

It is to be noticed that this proposition does not involve, but may be entirely consistent with, the exclusion of the idea of punishment for the injury done to society. It is punishment of the defendant for the wrong done to the plaintiff. It is punishment for an injury attempted or designed as well as for one inflicted. It is punishment for the intent to injure in numerous cases, where no injury can probably arise; and it is consistent with the assumption that the offence cannot be penally visited by the State; or if it can be, that the penalty is inflicted on a different ground.

. I am unable to see any logical contradiction in holding, that the same person may be compelled to atone for the same offence to an individual for a wrong done or menaced him, and to society for his aggression upon her peace; nor again, that the mode of making such atonement should be payment of money in each case. If this is so, then the adjustment of the proportion of punishment becomes a matter of practical arrangement; and it will be seen that tribunals of justice have so adjusted it.

In this connection I may advert to the point taken by the counsel, that this doctrine of punishment invades the provision of the present constitution, that no person shall be subject to be twice put in jeopardy for the same offence. That precept is found in the early ages of the common law in the maxim, *nemo debet bis puniri pro uno delicto*, and was applicable to criminal prosecutions, and when one judgment or sentence had been perfected. Another maxim, perhaps more pertinent, is, that no one should be twice vexed, if it appears to the court, that it is for one and the same cause. (Shawe's Case, 5 *Rep.*, 61).

It has never been imagined that either of these precepts interposed an objection to the institution of proceedings by the State simultaneously with an action by an individual for a libel. It has become settled law in England and in this State, that the existence or determination of the one is no bar to the other, although it may bear upon the question of the suspension of proceedings, and mitigation of punishment, in the

criminal court. That court will postpone sentence or the proceedings, until the result of the civil suit is known, with a view to the extent of punishment; but the civil action is not stayed or affected by the criminal prosecution. (Cook *v.* Ellis, 6 *Hill*, 466, and cases). I am informed by two gentlemen, who have each filled the office of district attorney, that the practice is as frequent to stay proceedings before as after conviction, until the result of the civil suit is ascertained.

The punishment upon conviction for a libel in our State, is a fine not exceeding $250, or imprisonment not exceeding one year, or both such fine and imprisonment. (2 *R. S.*, 697). This is the reparation to the public, which the legislature has deemed sufficient for the vindication of public justice. And that offence which is thus punished, is the tendency of the libel to provoke to a breach of the peace. (1 *Haw. Pl. C.*, 73; 2 *Kent*, 17).

This tendency is so essentially the ground of the criminal prosecution, that it lay at the root of the rule so long prevalent in our own country, that the truth upon an indictment for a libel could not be given in evidence. (The People *v.* Croswell, 2 *John. Cas.*, 392; 2 *Kent*, 18). Whether true or false, the danger to the peace of the country was the same.

When, then, the terms vindictive damages, or exemplary damages, are employed in a civil action for libel, they mean, in my opinion, the atonement which the law demands shall be made to the libeled party by the offender, and such atonement involves essentially his punishment. It is a condemnation and infliction for traducing the individual—not for provoking him to break the peace.

It would be objectionable in this view of the case, to instruct a jury to give damages on the ground that the interests of society required the defendant's punishment, or that they could consider the offence to the State as a reason for increasing the damages. It must be admitted that this idea has, in some cases, been loosely and partially presented. It does not belong to that idea of the punishment now sought to be developed. That is consistent with the supposition, either that there is no penalty on behalf of the State, or that such penalty is for another cause, and with a different object.

The moment we admit of any exception to the naked rule of compensation, measured by an accurate or approximate computation of actual pecuniary loss, we admit the idea of a reparation for something indefinite, and the adjustment of which must be indefinite.

It is stated that the Lord Commissioner (Adam) of Scotland—the most earnest advocate of the most restricted rule—said, in an action for defamation of a professional man, " that the question of damages must always include both a question of loss and *solatium.*" (Quoted by Mr. Sedgwick, 465, *N.*). The allowance of any sum for *solatium,* is an allowance for something beyond positive loss, and for reparation distinct from restoration. It seems difficult to separate this idea of reparation from that of punishment. What is taken from the offender beyond what is lost and can be restored to the party injured, partakes of the nature of a penalty.

But again, there is a class of libel cases in which the character and situation of the person assailed, preclude the possibility, not merely of a pecuniary loss, but of an injury to his reputation, or even a wound to feeling. Lord Tenterden adverts to such instances when he speaks of the calumnies of those whose censure is more to be desired than their praise ;. and Cicero had before declared : *Invidiam virtute paratam, gloriam, non invidiam, putarem.* (*In Cat.*)

When the justice of the country is invoked to deal with a libeler in such a case, on what ground can any damage be awarded but upon that of atonement for an attempted offence, and punishment, as the absolute foundation and object of the verdict ? Civil actions for libels must be abandoned, and in cases where the just indignation of an honest community demands their enforcement, if such a principle must be surrendered.

With these views, I have examined the leading English cases, and those of our sister States, which are cited by Mr. Sedgwick in his able work upon damages, and in the comments of Mr. Greenleaf and Mr. Metcalf upon them. A few others may be added. (Cole *v.* Tucker, 6 *Texas Rep.*, 268 ; Fleet *v.* Hollerheep, 13 *B. Monroe,* 225 ; Stout *v.* Prad, *Coxe's N. J. Rep.*, 79 ; Trabrue *v.* Mays, 3 *Dana,* 138). It appears.

to me, that the great body of these authorities sanction the rule as I have attempted to express it.

It is superfluous for me to notice the decisions in our own State, after the critical and ample examination of them by my associate. I content myself with adverting to that of Tillotson *v.* Cheetham, in 1808, (3 *Johns. R.* 56), and to those of Collins *v.* The Albany R. R. Company, in 1852, (12 *Barbour*, 495), and Taylor *v.* Church, in 1853. (*Selden's Notes of Appeal Cases, July* 1853, 50).

In 1808, Chief Justice Spencer stated, " that it had always been the practice to instruct the jury in vindictive actions, such as libels, that they are to inflict damages for example's sake, and by way of punishment to the defendant." The rule thus declared to have always prevailed before 1808, has prevailed ever since, and has been recognized, or assumed to exist, in a long series of decisions in our State. It has become consecrated as an enduring maxim of our laws, by a perpetual tribute to its legal truth, offered by the illustrious judges of our tribunals, from the day of Spencer and of Kent to the charge of the chief justice of this court in the present cause. For myself, I feel that in wandering from it, I should merit the admonition involved in the maxim of Lord Coke : *Quod novum judicium non dat jus novum, sed declarat antiquum.*

For these reasons I consider the refusal of the judge to charge the jury as he was requested in the 29th exception, to be unobjectionable, and his actual charge correct.

A new trial must, however, be granted, on account of the admission of the deposition of Strakosch.

II. *March.*—Order to show cause why plaintiff should not be at liberty to introduce proof that Strakosch was in fact absent from the ·city at the time of the trial.

The plaintiff moved upon affidavits showing that at the time of the trial Strakosch was actually absent from the State,—he having left, the day after his deposition was taken,—that he might be allowed to prove the fact of the witness' absence either at the bar of the court or before a referee to be appointed ; and that on that fact being satisfactorily proved,

the order granting a new trial, might be vacated, a re-argument ordered, and that the case or bill of exceptions might be so amended as to make it appear thereby that the absence of Strakosch was satisfactorily proved.

*A. L. Jordan* and *F. A. Sherman,* for the motion. The proof of the absence of Strakosch from the State, is now, and was at the trial, addressed solely to the court and not to the jury, and therefore could not affect the verdict. The proof showing both now and at the trial, that Strakosch was out of the State, and the proof at the trial slight as it was, being satisfactory to the judge before the deposition was read to the jury, if it is now satisfactory to the court, the order granting a new trial should be vacated. (Roche *v.* Wood, 7 *How. Pr. R.,* 416, Morgan *v.* Avery, 7 *Barb.,* 656). And the court may after granting a new trial, even on an *ex parte* application, order a re-argument and allow amendments in substance, and then reverse their own judgment. (Slocum *v.* Fairchild, 1 *Hill,* 294). Under the Code a new trial ought not to be granted, on the ground that the absence of Strakosch was not satisfactorily proved at the trial, if it is satisfactorily proved now. (§ 176, 467, 173, 174 and 271, subd. 2).

*D. D. Field, J. Townsend* and *B. Galbraith,* opposed.

First.—The motion is entirely unprecedented.

Second.—It supposes, first, that if it had been made at the argument on the appeal, it would at the last term have been successful; and second, that though not made then, the court will hear it now.

Third.—The court will not re-open the case for the purpose of letting in this motion :—

1. Is it clear that the court has the power to order a re-hearing of the appeal? For this is in effect an attempt to obtain a re-hearing. The Code declares (§38), when an appeal shall be re-heard. Does not that by implication exclude a re-hearing for any other cause?

2. But supposing it to have the power, yet the restraints it imposes on itself will not allow it to re-hear this case. Its own dignity, and the respect which it requires, and the orderly con-

duct of its proceedings, forbid it. The parties have had their day in court. If re-hearings are allowed in one case, they will be asked in all. The constitution of the court makes it partic-ularly inconvenient, only three judges generally sitting at the general term, (4 *McLean,* 254 ; 4 *Wend.,* 188 ; 25 *Wend.,* 253) ; and if re-hearings are allowed, they will always be attempted when the six judges are on the bench.

3. The courts have always leaned against re-hearings. There is a sort of tradition on the bench that they are injurious, and to be discouraged.

4. There were other points in the case argued at the general term, on which no opinion was expressed.

5. The plaintiff has acquiesced in the decision, and under it noticed the case for trial at the present term. It is submitted, therefore, that the court will not grant this application, for these reasons, if there were no others, that the case has been once fully heard, carefully considered, the order for a new trial entered, and the cause noticed for trial.

Fourth.—If, however, the decision of the general term were to be re-opened, the application to examine witnesses, to supply the defect of proof at the trial, should not be granted:—

1. The jurisdiction of the general term is purely appellate, and that implies that it shall decide the case upon the same grounds as the special term. (*Code,* § 37.)

2. The deposition of a witness taken conditionally can only be read " after it has been proved that he is absent." The proof of absence cannot be made or supplied after the deposi-tion is given in evidence. (2 *R. S.,* 392, § 7).

3. The cause was heard at the last term upon exceptions, as well as upon a case. An exception cannot be obviated by proof at the argument of the appeal.

4. The instances in which proof has been heretofore permit-ted to supply omission at the trial are those in which the proof was documentary and could not be contradicted, and the motion was addressed to the discretion of the Court. (3 *Johns. Cas.,* 125 ; 13 *Wend.,* 525 ; 2 *Sandf.,* S. C., 719).

Fifth.—The Code gives no countenance whatever to this motion ; it is not a case of " amendment." If it were other-wise one might always supply defective proof on an appeal ;

and proof might as well be introduced on one side as the other, to reject a deposition, as to admit it. The word "proceeding," in the view of the Court of Appeals, does not include an affidavit. (1 *Comst.*, 611). " To supply an omission in any proceeding," in section 174, refers to an omission in a record or paper—otherwise one might supply an omission to appeal or to give evidence. (Sec. §§ 174, 327; 7 *P. R.*, 108, 8 *P. R.*, 301).

Sixth.—If, however, the case were one in which all the obstacles before mentioned were removed, and the court would re-open the case and the omission might be supplied by proofs at the bar, yet it would be a matter resting in the discretion of the court, and governed by considerations affecting the furtherance of justice. In this case justice would not be promoted by the admission.

OAKLEY, C. J., (orally). On last Saturday a motion was made and argued in the case of Fry against Bennett. Fry, as is well known, sued Bennett for a series of libels on his character and conduct as the manager of an opera. Trial was had of that suit, and it resulted in a verdict against defendant. In the course of that trial, the deposition of one Strakosch was offered in evidence. He had been examined by virtue of an order made for that purpose. His deposition was offered to be read, and it was received, under the general objection on the part of defendant's counsel that the absence of the party was not satisfactorily proved. On the argument of the case an exception was taken to the ruling of the judge at the trial admitting that deposition, and a bill of exceptions on all the evidence in the matter was brought before the court and argued. The court ordered a new trial solely on the ground of the improper admission of that deposition. Various other questions of importance and magnitude were involved in the case, in respect to some of which the judges who decided the case expressed an opinion ; but, as I understand it, the reversal of the judgment and the ordering of a new trial rested on no other ground than that just referred to. After this argument, and after the decision of the case, an order for a new trial was entered. The plaintiff now proposes to produce testimony at

the bar of the court, in order to remedy the defect in the evidence which existed at the trial, in relation to the absence of Mr. Strakosch. He proposes to produce witnesses and have them examined, and he has presented the affidavits of these witnesses, going to establish very clearly that this man was, in fact, absent at the time of the trial; and which evidence, if it had been produced on the trial, would appear sufficient to have authorized the introduction of the deposition.

In the discussion which took place last Saturday on this matter, counsel for plaintiff was admitted—perhaps a little irregularly—to enter into an argument as to the correctness of the decision of the court in admitting this deposition. The court heard him, as much perhaps out of deference to counsel as from any other reason. He also entered into a similar discussion, intending to show that the judges who heard the case on the bill of exceptions had come to a resolution which was contrary to law. In disposing of this matter now, I take occasion to say that the judges who made that decision, and ordered a new trial, and to whom these suggestions were made, see no reason to alter the views which they then entertained in relation to this matter. The question which counsel, in his argument, presented, did not naturally or positively connect itself with the motion before the court. Still, however, as the counsel entered into an argument on the subject, it is proper to say here, that the judges who so decided have not in those suggestions discovered any reason to doubt the correctness of the conclusion at which they arrived in that case.

Now, in respect to the points on which this motion turns, we have examined the matter, and we cannot see any just ground on which we can grant this motion. It has, no doubt, often happened—I know it myself in my own experience, and I know it as a matter of common expediency—that when, on the trial of the case, there has been some omission of evidence, which afterwards, on an examination of the case at bar, is discovered to be material, it is within the discretion of the court to permit such evidence to be supplied. It is done, for instance, in the case of a judgment record, or of a deed, or of any documents as to which there can be no dispute, and which can lead to no conflict of testimony. Courts have occasionally, when

such matters have come before them, sent a case back for a new trial; but that is seldom done when the purpose is merely to introduce a document which could, in no possible way, have influence upon the minds of the jury. The attempt now is to carry this practice further. It is attempted to have an application of this kind made to the court after judgment in the case. After the case is decided, and a new trial ordered, it is attempted to introduce evidence on a point which might be the subject of conflicting testimony. Thus, witnesses whom the plaintiff's counsel proposes to produce before the court and examine, might, for all we know, be contradicted, and successfully contradicted, by others. At all events, the admission of such evidence would open the door for a trial on matters of fact which were not sufficiently proved at the trial; and this would be clearly inconvenient, and not only that, but highly improper. We are quite of opinion, therefore, that we cannot extend the practice on this subject beyond the cases in which it has been hitherto adopted; that is, beyond cases in which, when a bill of exceptions is brought before the court, application is made to supply a defect in the evidence—formal merely —and which evidence, when produced, verifies itself, and is necessary, as a matter of record, to sustain the party who obtained the verdict. This is allowed to be done when it is unnecessary and inexpedient to put the parties to the expense of a new trial, and where the proposed supplementary evidence is merely a paper which cannot be disputed. In this practice there is nothing unsafe or inconvenient; but it is easy to see that if we were to go further, and undertake to enter into inquiries in relation to evidence which in its very nature is controvertible, where opposite witnesses might be called, and where it would be for the court to weigh the credit of the witnesses, such a practice would lead to great irregularity. On that ground, therefore, it is quite clear that this motion cannot be granted. It is quite clear, also, that such a motion never has been granted after judgment being given. The application is, in fact, to open a judgment which has been entered, to set aside the order for a new trial, to allow additional facts to be proved, and to bring the matter up *de novo*. In the judgment of the court, that would be the effect of granting this motion.

Now, it is much better that the parties be put to the inconvenience of a new trial, in which this defective proof in regard to Strakosch's deposition may be remedied. On the whole, therefore, the motion must be denied. The reasons for this decision are given more extensively in detail in the written opinion, which can be resorted to by parties interested in it.

By THE COURT, BOSWORTH, J.—We have no doubt that the deposition of Strakosch was improperly admitted as evidence, and that a new trial should have been granted for that cause. It is now contended by the plaintiff, that, conceding this to be so, yet as the evidence on which its admissibility depends is, by statute, to be addressed to the court only, and is not to be, and is not considered by the jury in forming their verdict, and as it is now made apparent, by satisfactory proof, or can be made so, that Strakosch was continuously absent from the State until after the trial, the court should now allow the fact to be proved; and that if conclusive proof is given, the order granting a new trial should be vacated, and a re-argument ordered, and the case be so amended as to present on its face satisfactory proof of the fact of such absence.

The plaintiff relies mainly on that class of cases in which a party who has obtained a verdict on defective or insufficient proof of some fact, the existence of which depended on record or documentary evidence, has been allowed to supply the defect, *on the argument* of a motion for a new trial, by producing a properly exemplified copy of the record or document. He cited 2 *Sand., S. C. R.*, 719; 3 *Barb.*, 429; 24 *Wend.*; 14 *Wend.*, 126; 4 *Wend.*, 591; 13 *J. R.*, 517; 3 *J. C.*, 125; 2 *Metcalf*, 64.

All of those cases, except two, (3 *Barb.*, 420, and 24 *Wend.*, 14), came before the Court on a case made, and not on a bill of exceptions, or upon a writ of error. In all of them the defect was supplied *on the argument*, and before a decision was made by the Court *in banc*. And in all of them the point defectively proved at the trial was capable of being proved by record evidence, which could not have been controverted had it been produced at the proper time, and evidence of the latter kind was produced and received *on the argument* in opposition.

ɔ the motion for a new trial. It has been expressly decided that that rule does not apply to a *bill of exceptions*. In Hart *v.* Coltrain, (24 *Wend.* 14), the Court stated the rule in these terms:—

" A motion for a new trial, on a *case* made, is addressed to the sound discretion of the Court; and where the party relies on some defect in the proofs, which is afterwards supplied by evidence which could not have been controverted had it been produced at the proper time, and the Court see that a new trial could be of no use, the motion would be denied.—(Burt *v.* Place, 4, *Wend.* 597, and cases cited). But this rule does not apply to a bill of exceptions, and we cannot look into the affidavit."

In that case an exemplification of an affidavit made by an administrator before a Judge of the Court of Probate was produced at the argument, which, it was claimed, was sufficient to confer jurisdiction to make an order, the validity of which was questioned at the trial, on the ground that it was not then shown that jurisdiction to make it had been acquired. But as the cause was before the court on a bill of exceptions, and not on a case, the court refused to look at the exemplified copy, and ordered a new trial.

In Dresser *v.* Brooks, (3 *Barb.* 429), this distinction does not appear to have been adverted to, and no reference is made to Hart *v.* Coltrain. The only decisions cited are, 14 *Wend.*, 126, 13 *ib.*, 524, and 5 *ib.*, 535. In these causes the defeated party moved for a new trial on a case.

It may perhaps be said of Dresser *v.* Brooks, that although the report of it shows that exceptions were taken at the trial, yet it does not state that that case came before the court on a bill of exceptions. If before the court on a case, which reserved no right that it should be turned into a bill of exceptions, the decision made in it does not conflict with that made in Hart *v.* Coltrain. We have been referred to no case in which a re-argument was ordered to allow such proof to be given after the verdict had been set aside and a new trial granted. Nor have we been referred to any case in which defective proof was allowed to be supplied on the argument of a motion for a new trial, even when such proof was to be

considered by the court only, if the fact to be proved was to be established by the *viva voce* testimony of witnesses, or by any evidence which in its nature was controvertible.

To allow such a motion, would assume that it was competent and not inexpedient for the court, after reversing a judgment upon an exception taken at the trial, and after both parties had been heard upon it, at the general term, to vacate the judgment of reversal, and allow defective evidence to be supplied by proofs, to be given at the general term, provided the proofs related to a point upon which evidence was to be given to the court only, and then rehear the appeal, and dispose of it as if such proof had been produced at the trial.

The statute requires " satisfactory proof" to be given at the trial; and unless it is there given, the party taking such a deposition, has no right to read it at all. To grant this application, would be equivalent to holding that, although there was, confessedly, no evidence given at the trial of the absence of the witness from the State, yet the Court, on appeal, and on reviewing an *exception* taken to such an admission of a deposition, might, without any impropriety, allow witnesses to be examined at the general term, to prove that in point of fact, the person who had been examined *de bene esse* had continued absent from the State, so that his attendance could not be compelled by the ordinary process of law. Whether an appeal at the general term is from an order denying a motion made for a new trial on a case, or from a decision of questions of law upon a bill of exceptions, we are of opinion that it would be improper, and highly inexpedient, to so extend and apply the rule as it would be necessary to do, to sustain this motion.

The motion is therefore denied, with costs.