Birchard, J.
Two questions are presented for our consideration by this demurrer —
First: Can a special action on the case for fraud, which has resulted in damage of the plaintiffs, be maintained in a case like this, upon sufficient declaration ?
Second: Is this declaration good upon demurrer 1
It may be regarded as a well settled principle, that for every fraud or deceit which results in consequential damage to a party,.he may maintain a special action on the case; Upton v. Vail, 6 Johns. Rep. 182. The principle is one of natural justice, long recognized in the law; Barney v. Dewy, 13 Johns, Rep. 236. And it matters not, so far as the right of action is concerned, whether the means of accomplishing the deception be complex or simple — a deep laid scheme of swindling or a direct falsehood —a combined effort of a number of associates or the sole effort of a solitary individual — provided the deception be effected and the damage complained of be the consequence of the deception. A valid act of incorporation, or an invalid and pretended right to exercise corporate franchises, is alike powerless to secure the guilty from the consequences of their fraudulent conduct, where it has been knowingly resorted to as the mere means of chicane and imposition, and used to facilitate the work of deception and injury. Were it otherwise, it would be a reproach to the law.
*667 If the defendants, with the design to defraud the public generally, have knowingly combined together and held forth false and deceptive colors, and done acts which were wrong, and have thereby injured the plaintiff, they must make him whole by responding to the full extent of that injury, and they cannot place between him and justice, with any success, the charter of the German Bank, of Wooster, whether it be valid or void, forfeited or in esse. Neither a good nor a bad thing may be falsely used for purposes of deception and made a scapegoat for responsibility. Nor is it material that there should have been an intention to defraud the plaintiff in particular. If there was a general design to defraud all such as could be defrauded by taking their paper issues, it is sufficient, and the plaintiff may maintain his suit, provided he has taken the paper and suffers from the fraud. Allen v. Addington, 7. Wend. Rep. 22; Williams v. Wood, 14 Wend. Rep. 126.
The act incorporating the President and Directors of the German Bank of Wooster, admitting it to be in force, conferred no authority upon any person to hold out false colors to deceive the public, no authority to issue bills without the means of redeeming them, and those who combined to use it for the purposes of swindling, acted for themselves rather than as agents of the bank.
They would make themselves liable, at all events, upon the general principle applicable to natural persons. The agent may bind himself, if he exceed the authority of the principal, and conduct himself fraudulently when the principal is a natural person. The same rule applies to the agents of artificial persons. In Vose v. Grant, 15 Mass. Rep. 519, it is said: “If c the stockholders of a bank, whilst their charter is in force and { their bills in free circulation, should suddenly determine to 1 divide and withdraw their capital, and if the funds left in the * bank should be insufficient to pay their debts, it would ap- ‘ pear impossible to reconcile their conduct with honesty and ‘ good faith, and they would be liable to all persons injured by ‘ the measure. * * * If any number of persons combine, *668 { with intent to injure and defraud another, they cannot defend * themselves against an action by showing that they did the act t jn character of corporators, under any charter whatever.”'
These are safe principles, founded in good sense,- which we recognize as law. ■ •
On a question of so much importance in point of principle,, and of some novelty, we owe it to the profession to notice, the ■objections urged in argument to sustaining an action in a case of this nature. ■ . ■
It is first said, that to allow bill holders who have been defrauded to sue the members of the company individually at law, will produce endless litigation, and. when applied, the remedy cannot by possibility do equal justice' to all the creditors, or' to the members of the company.
It' may be that numerous suits will be prosecuted ; and if the averments of the declaration are' true, and over one hundred and twenty-five thousand dollars in paper was fraudulently put in circulation, it is more than probable that a great many persons have been defrauded by it, and have sustained injury,, for which they will prosecute those who contrived to cheat them. And yet the doctrine, that because they have cheated' thousands they are safer than théy would be if only one man had suffered, does not obtain in courts of justice.
■ Concerning the other branch of the argument, “ the impos- * sibility to do equal justice to all the creditors,” there may be some mistake. So far as a right of action is given to each there will be equality. And if equal vigilance is pursued, no one will gain any advantage- of the other bill holder.
Again, it is said the fund sought is a trust fund, and a bill in chancery is the proper remedy. . There would be much propriety in the position, were.it in point of fact true, that a party who has been defrauded by the'act of another'has no redress save out of a fund composed solely of the proceeds of the imposition. In that case strict equity might require that ail those whose injuries had been the source of'the fund should share' equitably in it. But the rule that a person sustaining damage *669 by fraudulent acts of another can only look to a particular fund of the wrongdoer for redress, never existed any where. Whenever the judgment shall be obtained, the sheriff will collect it out of any property liable to sale which he can find belonging to the defendants.' This is applicable to all judgments recovered in special actions on the case. In this case the damages to be recovered should be commensurate with the injury done to the plaintiff, which will not in any sense depend upon the state of the .assets of the bank, or its solvency. The judgment, therefore, that may be recovered will not affect trust funds, strictly so called, but general funds, the rights, credits and effects of the individuals instrumental in committing the fraud complained of. The rules of right are not so narrow as to compel the plaintiffs to put up with less than a full compensation in damages, and the extent of that damage in no sense depends upon the profits of the banking speculation entered upon by the defendants. It is not of any moment that the defendants should have 'made a profit by their frauds. That is an inquiry that cannot affect the plaintiff’s rights'. The gist of his complaint is, that they by their acts have imposed upon him, and that he has sustained an injury by means of the imposition.
The second branch of our inquiry relates to the sufficiency of the declaration. For my own part I should not find much difficulty in holding, upon general demurrer, that it contains a substantial cause of action. Two of my brethren are clear in the opinion that the declaration is insufficient, and out of .respect to them, arid entertaining some doubts upon the subject, I, with the other members of the Court, unite with them, much preferring to subject the party to the expense and trouble of amending, than that he should run any risk of a trial upon an insufficient declaration; and this the more readily, inasmuch as it will not delay the final disposition of the cause. The objection taken by counsel is a want of certainty. The action is founded on a fraudulent combination, and for holding out false colors at the commencement of the banking operations, and at various subsequent periods. The only direct charge of *670 a fraudulent intention is in the withdrawal of the funds, and fo*8; for aught that appears, may have been long since the bills plaintiff’s hands were issued. Besides, the declaration does not directly charge that the false pretence of- acting, under the charter of 1816, was made, or that the association was entered into with a fraudulent intent, nor that the excessive issue of paper was so made. It is thought that the averment of a fraudulent design should have been made in positive terms, as to each specific act relied upon to sustain the action. That although it may appear, by inference, that the original design, or those subsequently formed, was to impose upon community, inasmuch as deception must necessarily result from the alledged pretences, which the declaration falsifies, yet, that the Court will not, in support of pleading, infer a criminal intention where the pleader has not ventured directly to affirm that it existed. The issue of the bills which have come to the plaintiff’s hands was the cause of his loss. These bills were, in fact, fraudulently issued, if put forth without capital to sustain them ; and to pretend that the charter of 1816 authorized the assumed operation under it, when it did not in fact confer such authority, owing to the causes assigned in the declaration, was doubtless the employing of false pretences well calculated to deceive the public; and the charge should be made in direct terms, that, in using these means, the design was to defraud. It should not be' left to inference.
On motion, leave was given to amend the declaration, and the cause continued.