BANK OF ATCHISON COUNTY v. BYERS *et al.*, *Appellant.*

Division Two, June 8, 1897.*

139 627
90a 502
139 627
95a 1401

1. **Fraud**: FALSE REPRESENTATION: NECESSARY ELEMENTS. A false representation of fact, made with a knowledge of its falsity to a person ignorant thereof, with intention that it shall be acted upon, followed by action thereon amounting to substantial change of position, is a fraud of which the law will take cognizance.

2. ———: WORDS PRINTED ON BONDS. The sale of bonds on which were indorsed and printed on the face "first debenture bonds," and which recited that they were secured by a mortgage on certain lands, but which mortgage was in fact a second mortgage, is *held* to be a fraud, the purchasers relying on the printed and indorsed words, and the officers of the corporation having knowledge of the falsity of the statement that they were "first debenture bonds."

3. ———: DAMAGES. In an action for a fraudulent sale, there can be no recovery unless the fraud produces actual injury.

4. ———: FORECLOSURE OF FIRST MORTGAGE: MEASURE OF DAMAGES. The bonds secured by a first deed of trust became due, judgment of foreclosure was rendered by court, and third parties became the purchasers of the property, by which the security was entirely lost to the holders of the second mortgage bonds, which bore on their face that they were first debenture bonds. *Held*, that in such circumstances the damages were the difference between the value of the bonds if they had been as they purported to be on their face, and their value with the prior incumbrance on the lands of the company.

5. ———: LIABILITY OF CORPORATION: OFFICIAL AND PERSONAL RESPONSIBILITY. No one is permitted to escape personal liability, for fraud practiced by himself, in his official character as president, director or secretary of a private corporation, upon the ground that he was acting for the corporation.

*NOTE.—Decided March 11, and rehearing denied June 8, 1897.

*Appeal from Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

AFFIRMED.

*Karnes, Holmes & Krauthoff* for appellants.

(1)   A distinguishing characteristic of this case is the total want of any connection whatever of the appellants with the transaction in which the plaintiff claims to have been deceived.   The New Hampshire Investment Company of which they were officers was not even connected with it.   It was wholly between the plaintiff and the Winner Investment Company. No advantage could in any way accrue to appellants from the transaction, and with the exception of Mr. Perkins they were totally ignorant that any such transaction was about to take place.   There could, therefore, have been no motive whatever to deceive.   Bigelow on Fraud [1888 Ed.], 465, 466.   (2) . There is no evidence in the case of any intention on the part of these appellants that the statement on the bonds that they were first mortgage bonds should be acted upon by any person ignorant of the facts.   There was not only no evidence in this case of any intention that said statement should be acted upon by any person ignorant of the facts, but the evidence goes further and entirely negatives any such inference.   *Derry v. Peek*, 61 L. T. Rep. 265; s. o., L. R. 14 App. Cas. 337.   (3)   The court erred in giving plaintiff's instruction numbered 5.   It is ambiguous and misleading to the jury in that it makes no distinction between an "expectation, understanding and belief" that the Holmes deed of trust would be paid off before the Winner Investment Company would dispose of any of the bonds to ignorant parties, and an "expectation, understanding and be-

lief" that said deed of trust would be paid off after such bonds were so disposed of. (4) The court also erred in giving plaintiff's instruction numbered 3. The words "and be deceived thereby" so far color this instruction as to submit the case to the jury on the theory that under the evidence they might find that defendants intended that ignorant persons might purchase these bonds before the Holmes deed of trust was paid off, because in that way only could they "be deceived." (5) Instruction 4 is also erroneous. It asserts that, on the hypothesis assumed, plaintiff "had the right to presume that the matters contained in such statement and recitals were true and to rely and act thereon as true in purchasing said bonds" and that, as a matter of law, the failure to examine the land records constitutes no defense. *Clark v. Edgar*, 84 Mo. 106. (6) Plaintiff's ninth instruction is also erroneous because it permits the plaintiff to recover if it relied on the representations engraved on the bonds, regardless of whether in the opinion of the jury, the representations were such as would impose upon one of ordinary prudence and justify him in relying upon them without examination of the records. This instruction virtually took the case away from the jury. (7) Plaintiff's sixth instruction is not based on the evidence in the case. (8) Plaintiff's seventh instruction is erroneous. It tells the jury that if appellants put it within the power of the Winner Investment Company to market any of these bonds without paying off the Holmes deed of trust, then they were liable for the consequences to purchasers of said bonds from the Winner Investment Company. This proposition is little short of monstrous. (9) Plaintiff's third instruction is also erroneous because it tells the jury that as a matter of law the statement on the bonds that they were first mortgage bonds "both at the time

of the issue of said bonds and at the time of their purchase by plaintiff, except as to a part of the lots described in the deed of trust securing the same, was false." (10) The court erred in refusing to give defendants' thirteenth and fourteenth instructions. (11) The court erred in refusing to give defendants' instructions 7, 8 and 9, being separate demurrers to the evidence. If the pleadings and evidence in this case show that the plaintiff sustained no legal damage by the alleged fraud, it follows that the several demurrers to the evidence ought to have been sustained. *Doran v. Eaton*, 41 N. W. Rep. 244; *Hubbell v. Meigs*, 50 N. Y. 480; 3 Suth. Dam. [2 Ed.], sec. 1171; 1 Sedg. Dam. [8 Ed.], sec. 257; *Murray v. Stanton*, 99 Mass. 345; *Doran v. Eaton*, 41 N. W. Rep. 244; *Deck v. Feld*, 38 Mo. App. 674. (12) The court also erred in permitting plaintiff to prove that after it acquired the bonds in question the lands unreleased from the Holmes deed of trust were sold and conveyed under a decree foreclosing said deed of trust in the federal court. (13) The court committed error by refusing to "instruct the jury that neither defendant is responsible for the acts of the other defendants, and you are instructed to render a separate verdict as to each defendant." (14) Plaintiff can not recover from appellants because of the want of any transaction between them. This arises from the inherent nature of deceit as understood in the law. 1 Big. on Fraud [1888 Ed.], p. 465. (15) So far as appellants, Bunker and Perkins, are concerned their demurrers to the evidence should have been sustained as coming within the statute of frauds. R. S. 1889, sec. 5188. (16) *Clark v. Edgar*, 84 Mo. 106, so far as it furnishes a basis for this action, is unsound and ought to be overruled. *Van Weel v. Winston*, 115 U. S. 223.

*James S. Botsford* for respondent.

(1)   The very facts that the defendants in issuing these lithographed bonds of the New Hampshire Investment Company amounting to $1,000,000, used the words in the face of the bonds "New Hampshire Investment Company, First Mortgage Debenture Bonds," and on the back of the bonds the words, "New Hampshire Investment Company, Kansas City, Mo., First Mortgage Debenture Bonds," conclusively show that defendants in this case intended to deceive and defraud the purchasers of those bonds.   (2)   The law of this case is pretty well stated in the following decisions in this State:   *Clark v. Edgar*, 84 Mo. 106, which is a precise authority for this case; also *Arthur v. Wheeler & Wilson Co.*, 12 Mo. App. 335; *Scott v. Haynes*, 12 Mo. App. 596 and 597; *Hornblower v. Crandall*, 7 Mo. App. 220; *Watson v. Crandall*, 7 Mo. App. 233; *Watson v. Crandall*, 78 Mo. 583; *Caldwell v. Henry*, 76 Mo. 254; *Bailey v. Smock*, 61 Mo. 213; *Delaney v. Rogers*, 64 Mo. 201.   The action of the court in giving and refusing instructions in this case was in harmony with the foregoing authorities, cited both by us and appellants' counsel.   The instructions given for plaintiff were properly given and those refused for defendants were properly refused. (3) The court would have been well justified in giving an instruction directing a verdict for plaintiff and submitting to the jury only the question of damages.   In Bigelow on Fraud, the following elements are set out as being the only elements required in a case like this to be established by the evidence on the part of the plaintiff, namely:   *First,* false representation; *second,* knowledge by the person who made it of its falsity; *third,* ignorance of its falsity by the person to whom it was made; *fourth,* intention that it shall be acted upon; *fifth,* acting upon it with

damage. (4) It is contended by appellants' counsel that the plaintiff was not entitled to recover any damages. The evidence in this case shows that The New Hampshire Investment Company bonds all sold at par. Undoubtedly, The New Hampshire Investment Company bonds, if they had been first mortgage bonds on the property conveyed in The New Hampshire Investment Company deed of trust, would have been worth par, the amount for which they sold in the markets of the world; but these bonds proved to be worthless.

*Marcus T. C. Williams* also for respondent.

(1) That the facts stated in the petition are actionable at law in a suit by one injured thereby is clear both upon reason and authority. *Derry v. Peek*, L. R. 14 App. cases, 374. (2) It is a settled principle of law and of morals that everyone is presumed to intend the natural and probable consequences of his own acts; and the natural and probable consequences of the acts of defendants in making and disposing of bonds, negotiable in form and declaring on their face that they are first mortgage bonds, were that they would be negotiable in the markets of the world on the faith of the statement that they were first mortgage bonds, which alone gave them value as commercial securities. *Cowley v. Smith*, 46 N. J. L. 380, and cases cited; *Bank v. Buck*, 123 Mo. 154; *State v. Patterson*, 116 Mo. 513; *Snyder v. Free*, 114 Mo. 375; *Dulaney v. Rodgers*, 64 Mo. 204; *Joliffe v. Collins*, 21 Mo. 342; *Peers v. Davis*, 29 Mo. 189; *Brooking v. Shinn*, 25 Mo. App. 282. (3) These representations were made for the purpose of circulation. They go along with the bonds. *Clark v. Edgar*, 84 Mo. 110; *Bruff v. Mali*, 36 N. Y. 200; *Morgan v. Skiddy*, 62 N. Y. 319; *Bartholemew v. Bentley*, 15 Ohio St. 659; *Clark v. Dickson*, 6 C.

B. (N. S.) 453; *Railroad v. Kisch*, L. R. 2 English and Irish App. 100; *Bank v. Thayer*, 2 McCrary (C. C.), 1; *Nash v. Minn. Title Co.*, 159 Mass. 440. (4) And defendants are liable for the damages resulting from these false and fraudulent representations, although they might not have fraudulently converted the proceeds of the bonds sold to their own use or did not reap any personal advantage from the fraudulent transaction. *Paddock v. Fletcher*, 42 Vt. 389; *Bustered v. Farrington*, 36 Minn. 320, and cases cited; *Fisher v. Mellen*, 103 Mass. 503; *Pasley v. Freeman*, 2 Smith's Lead. Cases [8 Ed.], p. 66 and cases; *Watson v. Crandall*, 78 Mo. 583; *McBeth v. Craddock*, 28 Mo. App. 396. (5) The bonds are made in negotiable commercial paper, and upon such a recital plaintiff had the right to assume they were true, and was not bound to go behind it, or to look for anything except authority for the issue of the bonds and the value of the property securing them. *Cottrill v. Krum*, 100 Mo. 402; Benj. on Sales [4 Am. Ed.], sec. 429, and cases cited; 8 Am. and Eng. Ency. Law, pp. 794, 795, and cases cited, note 9. (6) First mortgage bonds mean bonds secured by first mortgage. *Clark v. Edgar*, 84 Mo. 110. (7) On the facts and law, the court was fully justified in giving the instructions to the jury on behalf of plaintiff and each of them. *Pomeroy v. Benton*, 57 Mo. 531; *Wannell v. Kem*, 57 Mo. 478; *Clark v. Edgar*, 84 Mo. 106. (8) The statute of frauds invoked by appelants' counsel, for the first time in this court, on behalf of defendants Bunker and Perkins, is not applicable to cases of this character. Defendants falsely authorized, made and issued fraudulent bonds of that company. It would be a manifest perversion of the statute of frauds to make it a shield for deliberate wrong. *Rogers v. Rogers*, 87 Mo. 260; *Pasley v. Freeman*, 3 T. R. 51; 2 Smith's Lead. Cas. [8 Ed.], p. 104; *French v.*

*Fitch*, 67 Mich. 492; *Clark v. Lumber Co.*, 86 Ala. 220; *Maybee v. Moore*, 90 Mo. 340, and cases cited. (9) The sole remaining question is one of damages, and the material inquiry here is, what is the measure of plaintiff's relief? It must be commensurate with the injury. At the time the bonds were received by plaintiff their market value was at par with their face value. They were received as full collateral security for $4,000. Their real value depended on the security behind them. If that security was as represented in the bonds they were worth $4,000. If that security was swept away by reason of a prior concealed incumbrance the bonds were worthless. The value of these bonds is the measure of damages in this case; or in other words, the difference between the value of the bonds with the prior incumbrance on the lands of the company and the value of the bonds if they had been first mortgage bonds as represented. 5 Am. and Eng. Ency. Law, p. 345, and cases cited; 8 Am. and Eng. Ency. Law, p. 820, and cases cited; Sedg. on Dam. [5 Ed.] 333, 655, 658, and cases cited; Big. on Fraud [Ed. 1888], pp. 627 and 628, and cases cited; *Caldwell v. Henry*, 76 Mo. 254; *Beth v. Craddock*, 28 Mo. App. 380; *Chinn v. Wagoner*, 26 Mo. App. 678. (10) "It is no part of the official duty of officers of corporations to commit fraud, and the active wrongdoer is always responsible for his own frauds." *Hempfling v. Burr*, 59 Mich. 294; *Hubbard v. Weare*, 79 Iowa, 687; 1 Mor. on Corp., secs. 573, 574, and cases cited; Thomp. on Liab. Off. Corp. 401, *et seq.*, and cases cited.

BURGESS, J.—This is an action against defendants Beyers, Bunker, Perkins, and Willard E. Winner, for damages alleged to have been sustained by plaintiff by reason of false representations made by them as officers of The New Hampshire Investment Company with

respect to the manner in which certain debenture bonds issued by said company were secured, by reason of which plaintiff was induced to become the purchaser of a certain number of said bonds. There was a verdict for defendant Winner, but against the other defendants in favor of plaintiff for $4,693.12. After unsuccessful motions for a new trial and in arrest of judgment, by the losing defendants, they appealed.

The petition alleges that defendants, as the officers of said New Hampshire Investment Company, a corporation duly incorporated under the laws of this State and doing business at Kansas City, Missouri, caused to be printed in conspicuous letters and figures on the face of each of the negotiable bonds of that company issued October 1, 1889, to the amount of $1,000,000 the following words: "$500. The New Hampshire Investment Company FIRST MORTGAGE DEBENTURE BONDS. $500."

And that defendants as officers of said investment company caused to be printed in conspicuous letters and figures on each of said bonds the following indorsement: "The New Hampshire Investment Company, Kansas City, Missouri. FIRST MORTGAGE DEBENTURE BONDS. Eight Per Cent. $500. Coupons payable on the first days of April and October, either at the Merchants' National Bank, Kansas City, Missouri, or at the American Loan and Trust Company, Boston, Massachusetts. Due October 1, 1894."

That said representations contained on the face of said bonds were false, which defendants, and each of them, well knew at the time of the execution and delivery of said bonds; that they were not first mortgage debenture bonds, and that the deed of trust executed on the land of the company to secure said bonds was not a first deed of trust on said lands. That all of the

lands described in said deed of trust, except a small portion thereof described in the petition, were at the time of the execution and delivery of said bonds and the deed of trust executed to secure their payment, and ever since have continued to be subject to a prior, valid, and subsisting lien and incumbrance of a deed of trust, executed by Lumas Hoyt Holmes, to secure the payment of bonds to the amount of $500,000, then due and unpaid. That defendants, as officers of said corporation, made such false statements on the face of the bonds and in the indorsèment thereof that the same were first mortgage debenture bonds for the purpose of inducing plaintiff, and others who might purchase the same, to believe that said bonds were in fact first mortgage bonds.

That the lands and town lots conveyed by the deed of trust to secure the payment of these bonds were sufficient and ample security for the payment of $1,000,000 of the bonds, if the same had been first mortgage bonds, and that the bonds had a market value as first mortgage bonds during the years 1889, 1890, and 1891 equal to the par value thereof, but that in consequence of said mortgage and first deed of trust made by said L. H. Holmes, the security created by the deed of trust of the New Hampshire company was, in fact, valueless. That the deed of trust made by said L. H. Holmes has been foreclosed and the lands sold free from the the encumbrance of the New Hampshire Investment Company deed of trust securing these bonds and the security thereby wholly destroyed.

That plaintiff, in March, 1891, became the owner and holder for value of eight of these bonds, each for $500, together with the interest coupons thereto attached, before the maturity thereof, on the faith of the representations on the face of said bonds, and the indorsement thereon, that each of said bonds were

first mortgage debenture bonds, and upon the reliance that said representations were true, and wholly ignorant of the fact they were not first mortgage bonds. And that plaintiff first learned that said bonds were not first mortgage bonds, as represented, but second mortgage bonds, on or about the first day of July, 1891. That the New Hampshire Investment Company is wholly insolvent, and had no other property except the real estate described in said deed of trust, and that it has ceased to do business. That the interest due on said bonds on the first day of October, 1891, and thereafter, remains due and unpaid; that plaintiff remains the owner and holder of said bonds; and that the same are wholly worthless. Plaintiff tenders the bonds in his petition to defendants, and alleges his damages in the sum of $5,000, for which plaintiff prays judgment.

The defendants all answered separately, denying generally the allegations in plaintiff's petition, except they admit that the lands and town lots described in and conveyed by the deed of trust referred to in the petition, made by said New Hampshire Investment Company, were worth during the years of 1889, 1890, and 1891, more than the aggregate sum of $1,000,000, and that they were a sufficient and ample security for the payment of $1,000,000 of bonds.

On the twenty-seventh day of April, 1887, the legal title to a large number of tracts of land, in Jackson county, Missouri, was vested in one Lucas H. Holmes, who on that day executed and delivered to one Oliver P. Dickinson, as trustee, a deed of trust on all of said lands in favor of the Winner Investment Company, to secure the payment of $500,000, evidenced by five hundred bonds for $1,000 executed by him to said Winner Investment Company. This deed of trust was duly recorded in the recorder's office in Jackson county

on the twenty-eighth day of April, 1887.    Prior to October 1, 1889, the legal title to the lands which had not been released from the Holmes deed of trust, had become vested in said New Hampshire Investment Company.    The lands released from said incumbrance were of the value of $110,000 in October, 1889, and in March, 1891.

At a meeting of the stockholders of The New Hampshire Investment Company held October 5, 1889, defendant Fred W. Perkins was elected a director and treasurer of said company.    He was also at the same time vice-president of the Winner Investment Company. Thereafter, and on the same day, at a meeting of the stockholders and board of directors of said New Hampshire Investment Company, it was resolved to borrow not exceeding $1,000,000 for the payment of the company's bonded and other indebtedness, to be used in the conduct of its general business, and for that purpose to issue and dispose of the company's bonds for the amount so borrowed, secured by mortgage on its property, the bonds to bear date October 1, 1889.

The form of the bonds and coupons to be as follows:

"2301.    $500.    United States of America.    $500. The New Hampshire Investment Company FIRST MORTGAGE DEBENTURE BOND.

"Know all men by these presents:    That the New Hampshire Investment Company, a corporation created and existing under and by virtue of the laws of the State of Missouri, with its office in Kansas City, in said State, is indebted to The Winner Investment Company in the sum of five hundred dollars, lawful money of the United States of America, which the said New Hampshire Investment Company, for value received, promises to pay to the said The Winner Investment Company, or order, on the first day of October, 1894,

together with interest thereon from and after date thereof, at the rate of eight per cent per annum, payable semiannually, on the first days of April and October of each year, on the presentation and surrender of the annexed coupons as they severally become due. Both principal and interest payable either at the Merchants' National Bank at Kansas City, Missouri, or at the American Loan and Trust Co., Boston, Mass., at the election of the holder. This bond is one of a series of sixteen hundred bonds of five hundred dollars each, and one thousand bonds of two hundred dollars each, all of even date herewith, and all payable on the first day of October, A. D. 1894, secured by deed of trust to The Missouri Union Trust Company of Kansas City, Missouri, trustee, bearing date of the first day of October, 1889, and in accordance with the terms and provisions of said deed of trust, upon the real estate and buildings thereon belonging to The New Hampshire Investment Company, lying, being, and situate in the county of Jackson, State of Missouri, and more definitely described in said deed of trust. This bond is to be valid only when authenticated by a certificate indorsed hereon and signed by said trustee, or its successor, named in said deed of trust.

"In testimony whereof, the said The New Hampshire Investment Company has caused its name to be signed by its president, and its corporate seal to be hereto affixed, and these presents to be countersigned by its secretary, and the engraved signature of its treasurer to be signed to said coupons this first day of October, 1889.

"THE NEW HAMPSHIRE INVESTMENT COMPANY,
          "[SEAL.]          By J. W. BYERS, President.
"Countersigned:   J. V. ELLARD, Secretary."

"$20.00.   On this first day of October, 1894, The New Hampshire Investment Company will pay to

the bearer, at the Merchants' National Bank of Kansas City, Missouri, or at the American Loan & Trust Company, Boston, Mass., twenty dollars, being six months interest on its first mortgage debenture bond. "No. 2301.        FRED W. PERKINS, Treasurer."

All of the coupons annexed to all of said bonds were signed by defendant Fred W..Perkins, as treasurer, and the bonds were all signed by J. W. Byers, as president.    They were printed, lithographed bonds and coupons.    At the head or caption of each bond was printed and lithographed in large letters and figures the following:

"500.    UNITED STATES OF AMERICA.    $500.    THE NEW HAMPSHIRE INVESTMENT COMPANY FIRST MORTGAGE DEBENTURE BOND."    .

And on the back of each bond was lithographed in large words and figures the following indorsement: "THE NEW HAMPSHIRE INVESTMENT COMPANY, KANSAS CITY, MO., FIRST MORTGAGE DEBENTURE BOND.    Eight per cent.    $500."

On the back of each of said bonds was also the following indorsement:

"Coupons payable on the first days of April and October, either at the Merchants' National Bank, Kansas City, Mo., or at the American Loan & Trust Co., Boston, Mass., due October 1, 1894.

"The undersigned trustee hereby certifies that the within bond is one of a series of sixteen hundred bonds of five hundred dollars each, and one thousand bonds of two hundred dollars each, issued by The New Hampshire Investment Company of Kansas City, Mo., secured by deed of trust dated October 1, 1889, given by The New Hampshire Investment Company to the Missouri Union Trust Company, the within named trustee.    And does further certify that the said deed of trust given to secure this bond is shown by the certifi-

cate of the proper officer to be duly recorded in Jackson county, Missouri, which is the county where the real estate described in said deed of trust is situated.

"MISSOURI UNION TRUST COMPANY, Trustee,

"By C. W. WHITEHEAD, President."

. On the back of each bond there was also the following further executed indorsement and assignment of The Winner Investment Company:

"For value received, The Winner Investment Company hereby assigns and transfers the within bond to ——— without recourse, but guarantees the payment of each interest coupon at maturity.

"THE WINNER INVESTMENT COMPANY,

"By WILLARD E. WINNER, President.

"Five hundred dollars ($500.)"

In pursuance of the resolution of the board of October 5, 1889, bonds were issued by said New Hampshire Investment Company to the amount of $1,000,000, bearing date October 1, 1889, and were secured by deed of trust which was executed by said New Hampshire Investment Company to the Missouri Union Trust Company, trustee, as party of the second, and said Winner Investment Company as party of the third part. It is dated October 5, 1889, and was signed and executed by defendant J. W. Byers, as president of the New Hampshire Investment Company and by defendant W. E. Winner, as president of the Winner Investment Company. It was recorded in Jackson county at Kansas City, on October 11, 1889, and at Independence on October 16, 1889. This deed of trust embraced all the lands included in the Holmes deed of trust, and which were still a security for the $500,000 of bonds secured by that deed of trust. There was and is a portion of the lands described in the New Hampshire Investment Company deed of trust as to

which that deed of trust was a first lien.    They are the lands which were not conveyed by the Lumas H. Holmes deed of trust and were worth from five to ten per cent of all the lands described in said New Hampshire Investment Company deed of trust.    Defendants knew of the existence of the Holmes deed of trust and bonds for more than two years before the execution of the New Hampshire Investment Company deed of trust and bonds.

At a meeting of the board of directors of the New Hampshire Investment Company, held on October 8, 1889, the Winner Investment Company made a written proposition to the New Hampshire Investment Company, to take the entire issue of $1,000,000 of bonds at ninety-five cents on the dollar.    The proposition was as follows:

"October 8, 1889.

"*New Hampshire Investment Co.*:

"GENTLEMEN:—We propose to take the whole issue of one million dollars of bonds of your Company for 95c. on the dollar, payable as follows: $410,000, the bonded debt now on the ground, with $16,000, the estimated interest on same to date of new bonds—50 per cent on the capital stock of the Company for the redemption of same, amounting to $500,000, with interest at 8 per cent from July 1, 1889, estimated at $12,500, the balance to be paid over to the treasurer of your Company.          Respectfully,

"THE WINNER INVESTMENT CO.,
"By WILLARD E. WINNER, Prest."

This proposition was accepted by a resolution of the board.

It appears from the acceptance of this proposition that the Holmes deed of trust had been reduced from $500,000 to $410,000.    The Winner Investment Com-

pany disposed of $624,000 of the $1,000,000 issue of bonds and had reduced the Holmes mortgage by payments down to $303,000. The $4,000 of bonds held by the plaintiff in this case, as collateral, constituted a part of said $624,000 which it disposed of.

Plaintiff acquired said $4,000 of bonds under the following circumstances: In the latter part of October, 1890, the Winner Investment Company sold to plaintiff two notes, one for $4,000 and the other for $2,000, both executed by John H. Oetzel, dated October 27, 1890, and payable four months after their date to Willard E. Winner, by whom and the Winner Investment Company they were indorsed. Their payment was also secured by the deposit for that purpose with the Kansas City Safe Deposit and Savings Bank of $4,000 of Winner building bonds. Neither of said notes was paid at maturity, and being in default, Mr. Grant Wyatt, cashier of the plaintiff bank, came to Kansas City on March 12, 1891, to try to collect them. At that time the Winner building bonds were worthless and both Winner and the Winner Investment Company had become hopelessly insolvent and not a dollar could be collected from either of them at law. On that day the $2,000 note and all the accrued interest on both notes and interest on $4,000 for three months in advance were paid to the plaintiff and it surrendered the old notes and took the new note for $4,000 of that date, payable in three months with eight per cent interest from its maturity, signed by John H. Oetzel and indorsed by Willard E. Winner and the Winner Investment Company and secured by a pledge of eight of said bonds of the New Hampshire Investment Company, aggregating $4,000 by the Winner Investment Company, as collateral security. Mr. Wyatt testified that in this transaction he relied on the statement on the bonds that they were first mortgage

bonds. He did not examine the records, or cause them to be examined to ascertain the condition of the title. Plaintiff first discovered that these bonds were not first mortgage bonds in September, 1891, being a few days after the maturity of the new note which has never been paid.

The plaintiff was permitted over the objections and exception of the defendants, to prove by the record that under a decree of foreclosure dated June 8, 1892, rendered by the federal court at Kansas City, all of the unreleased lands covered by the Holmes deed of trust were, on September 7, 1892, sold by the master commissioner to Augustus P. Loring, Walter Lloyd Jeffries, and Edward P. Kimball, and said sale having been approved by the court on January 9, 1893, the master commissioner conveyed said lands to the purchasers on January 11, 1893, by deed which was duly acknowledged and recorded.

The New Hampshire Investment Company and Willard E. Winner were both shown to be insolvent at the time of the trial, at which time plaintiff made formal offer to deliver the $4,000 of bonds to the defendants.

The court at the instance of the plaintiff and over the objection and exception of defendants instructed the jury as follows:

"1. The court instructs the jury that the series of bonds amounting to one million dollars made by the New Hampshire Investment Company, through and by defendants as its officers and directors, of which series the eight bonds for $500 each, put in evidence by plaintiff, are a part, were and are negotiable instruments, and that said eight bonds with the indorsements thereon of the Winner Investment Company and the Missouri Union Investment Company, were transferable by delivery from hand to hand in the

commercial markets of the United States, and of the world.

"2. The court instructs the jury that if the plaintiff held other collaterals from the Winner Investment Company for the debt of that company to plaintiff and on the maturity of that debt the plaintiff, by the note for $4,000, dated March 12th, 1891, read in evidence, extended for three months the time for the payment of that debt to the extent of said $4,000, and if at the time of making of said note and extention and as a part of the same transaction plaintiff surrendered said collaterals to said Winner Investment Company, and took in lieu thereof from said Winner Investment Company eight bonds for $500 each of the New Hampshire Investment Company, then the plaintiff became the owner, by such substitution, and the holder of said eight bonds as the purchaser for value thereof.

"3. The court instructs the jury that the undisputed evidence shows that defendants, as the officers and directors of the New Hampshire Investment Company, represented, by a statement in each of the said bonds in evidence, that they were first mortgage bonds, and that said statement, both at the time of the issue of said bonds and at the time of their purchase by plaintiff, except as to a part of the lots described in the deed of trust securing the same, was false. And the jury is instructed that if you find from the evidence that defendants knew said statement in said bonds that said bonds were first mortgage bonds was false, when said bonds were made and signed, and that said defendants intended by that statement to give currency to said bonds and intended that purchasers throughout the country taking them as collateral security or otherwise should believe and act on that statement as true, and that defendants as persons of ordinary prudence knew, when making said state-

ment in said bonds, that they were first mortgage bonds, that purchasers thereof might act on the faith of that statement and be deceived thereby, and that plaintiff by its agent took said bonds as collateral security on the faith and reliance of and believing that said statement in said bonds by the officers and directors of said company issuing said bonds was true, and without any knowledge on the part of the plaintiff or its officers or agent that said bonds were not first mortgage bonds, and without knowledge that the lands contained in said deed of trust given to secure said bonds were subject to prior incumbrances; and if you further find from the evidence that plaintiff in the taking of said bonds was damaged by said false statement that said bonds were first mortgage bonds, then your verdict should be for plaintiff.

"4. The court instructs the jury that if you find from the evidence that the issue of one million bonds of the New Hampshire Investment Company were designed by defendants, as the officers and directors of that company, to circulate from hand to hand in the markets of the United States and of the world, on the faith of the statements and recitals printed and engraved on the face of the bonds, knowing the same to be untrue, then the purchaser of such bonds had the right to presume that the matters contained in such statements and recitals were true, and to rely and act thereon as true in purchasing said bonds, and if you find from the evidence that plaintiff took the eight bonds in such reliance on said statements and recitals, then it is no defense to this action that plaintiff by its agent failed and neglected to examine the land records of Jackson county, Missouri, as to the titles to the various tracts of land conveyed by the deed of trust to secure said bonds.

"5. The court instructs the jury that if you find from the evidence that defendants, as the officers and directors of the New Hampshire Investment Company, made the false statement in said bonds that the same were first mortgage bonds, intending that purchasers of such bonds should act on the faith of that statement, when they knew the statement to be untrue, and if you find from the evidence that plaintiff, by its agent, relied thereon and was deceived and damaged by that statement, then you are instructed that the fact, if you find such fact from the evidence, that defendants made such false statement with the expectation, understanding, and belief that the Winner Investment Company would, from the proceeds of said series of one million dollars of bonds, of which those in evidence held by plaintiff are a part, pay off the bonds secured by the prior trust deed made by L. H. Holmes, constitutes and is no defense to this action.

"6. The jury are instructed that, although you may find and believe from the evidence that defendants, in the making and issue of the bonds in controversy in this action, intended that they should be issued and sold on the market for the purpose of raising money to pay off and discharge the first deed of trust on the property of the New Hampshire Investment Company, and thereby make said bonds first mortgage bonds on said property, as recited therein, and that said bonds, when issued, were delivered to the Winner Investment Company, to be by them sold on the market, yet if you further find from the evidence that at the time the said bonds were issued and delivered to the plaintiff in this action, they were not first mortgage bonds as recited therein, then defendants are responsible for the truth of said recitals in said bonds, and such intent of defendants to make

them first mortgage bonds constitutes no defense to this action.

"7. If you find from the evidence that defendants placed the bonds in controversy with the Winner Investment Company to be put upon the market and negotiated and sold, and defendants thereby made it possible for said Winner Investment Company to transfer said bonds without taking up the bonds secured by the L. H. Holmes deed of trust, then defendants are liable for the consequences to purchasers of said bonds in controversy from said Winner Investment Company.

"8. The court instructs the jury that if you find from the evidence that plaintiff, in taking by its agent the eight bonds of the New Hampshire Investment Company, relied in part on the statement therein that they were first mortgage bonds, and that that statement was one of the causes that induced plaintiff by its agent, to take said bonds, then it is no defense to this action that plaintiff, by its agent, if you so find from the evidence, may also have relied in part on the statements and information of others respecting either the value or character of said bonds.

"9. The court instructs the jury that if the following facts are found from the evidence, the plaintiff is entitled to a verdict: *First*, that the representation in the one million dollar bonds in question, that they were first mortgage bonds, was known by the defendants to be false; *second*, that that representation was made by defendants with the intent that it should be acted on by persons purchasing such bonds, and that said bonds should be put upon the market and sold; *third*, that plaintiff was ignorant of the falsity of that representation when it bought said eight bonds, but believed it to be true, and relied on its truth in making its purchase, and in consequence of that representation

by the officers and directors of that company issuing the bonds, plaintiff refrained from examining the titles to the various tracts of lands conveyed as security; *fourth*, that plaintiff was damaged by that representation. The jury is further instructed that it is no defense to this action that defendants did not expect to receive and did not receive any personal gain or benefit from the issue of said one million dollar bonds containing said representation.

"10. The jury is instructed that if you find for the plaintiff, then you should give the plaintiff a verdict for such amount as covers the difference between the value of plaintiff's eight bonds with the prior incumbrances on the lands conveyed by the trust deed given to secure said bonds and the value of said eight bonds if they had been first mortgage bonds as represented, and said prior incumbrances had not existed when said bonds were made."

The court at the request of defendants instructed the jury as follows:

"1. The court instructs the jury that under the pleadings and the evidence your verdict must be for the defendant Willard E. Winner, it appearing that plaintiff has heretofore obtained a judgment against him on the note in question.

"2. The court instructs the jury that in order for plaintiff to recover it must be shown by the evidence that it has been injured pecuniarily by the statement on the bond that they were first mortgage debenture bonds, and if you believe from the evidence that plaintiff suffered no pecuniary loss or injury in the transaction whereby it acquired possession of said bonds, your verdict must be for the defendants.

"3. The court instructs the jury that in determining the value of the eight New Hampshire bonds received by the plaintiff on March 12, 1891, you will

take into consideration, together with all the facts and circumstances in evidence, the amount of the Holmes bonds (outstanding and unpaid) and the amount of the New Hampshire bonds which were disposed of and the value of the real estate described in the New Hampshire mortgage, which you are instructed is admitted by the pleadings in this case to have been more than one million dollars at all times in the years 1889, 1890 and 1891, and you are further instructed that the date as of which you are to determine such value is the 12th day of March, 1891.

"4. The court instructs the jury that it is charged by the plaintiff in its petition that the defendants, as officers of the New Hampshire Investment Company, caused the statement to be printed on the bonds offered in evidence, that they were first mortgage debenture bonds, for the purpose at the time said bonds were issued, in October, 1889, of inducing the plaintiff and others to believe that said bonds were in fact first mortgage debenture bonds, and the burden rests on the plaintiff to prove to your satisfaction, by the clear preponderance of all the evidence in the case, that defendants did entertain such purpose when said bonds were executed in October, 1889, in order to warrant you in finding any verdict for the plaintiff. And you are further instructed that said allegation is a charge of fraud, and that fraud is never to be presumed, and must be proved by the party making the charge; and if under the evidence the conduct of the defendant in issuing said New Hampshire bonds to the Winner Investment Company consists as well with honesty and fair dealing as with fraud, it is your duty to so find, and to bring in a verdict for the defendants.

"5. You are further instructed that by preponderance of the evidence is meant the greater weight of all the evidence in the case.

"6. The court instructs the jury that it is not charged that plaintiff received the bonds offered in evidence from the New Hampshire Investment Company, or from any of the defendants as its officers, and under the petition in this case the defendants are in no way liable to plaintiff for or on account of any representations, if any were made, to the plaintiff, or its cashier, at the time it received the bonds in March, 1891."

The court refused the following instructions asked by defendants.

"7. The court instructs the jury that under the pleadings and the evidence your verdict must be for the defendant J. W. Byers.

"8. The court instructs the jury that under the pleadings and the evidence your verdict must be for the defendant W. A. Bunker.

"9. The court instructs the jury that under the pleadings and the evidence your verdict must be for the defendant Fred W. Perkins.

"13. The court instructs the jury that in order for defendants to be held liable for the statement that the bonds were first mortgage debenture bonds, you must be satisfied from the evidence that defendants intended such statement to be acted on by persons ignorant of the existence of the prior incumbrance. Now, if you believe from the evidence that defendants, as officers and directors of the New Hampshire Investment Company, when said bonds were executed by them, intended only as a sale of said bonds to the Winner Investment Company in consideration in part of the payment by said Winner Investment Company of the Holmes mortgage on the lands, then and in such case said statement was not, in contemplation of law, intended to be acted upon by any person ignorant of the facts, and your verdict must be for the defendants.

"14. The court instructs the jury that if you

believe from the evidence that the eight New Hampshire bonds held by the plaintiff were never paid for by the Winner Investment Company, and that no authority was ever given by the New Hampshire Investment Company to use said bonds as collateral security for any indebtedness of the Winner Investment Company, or any other person, then the delivery of said bonds to the plaintiff as such collateral security for an indebtedness to it was without authority of said New Hampshire Investment Company, or of the defendants as its officers, and under those circumstances the statement on said bonds that they were first mortgage bonds was not the statement of the defendants, within the meaning of the law, and your verdict must be for the defendants.''

To the action of the court in refusing said instructions defendants at the time excepted. No point is made in this court upon the refusal of any instructions asked by defendant except those numbered 7, 8, 9, 13 and 14.

I. In actions at law for damages for misrepresentation it has been said that certain cases require the presence of no less than five elements of fraud, that no case requires the presence of more than the same five, and that some cases are satisfied with less. 1 Bigelow on Fraud [1888 Ed.], 466.

"The five elements referred to are, *first*, false representation; *second*, knowledge by the person who made it of its falsity; *third*, ignorance of its falsity by the person to whom it was made; *fourth*, intention that it shall be acted upon; *fifth*, acting upon it with damage. And these may be thus formulated: A false representation of fact, made with a knowledge of its falsity to a person ignorant thereof, with intention that it shall be acted upon, followed by action thereon amounting to substantial change of position, is a fraud

of which the law will take cognizance. An action for damages technically known as an action of or for deceit, may require the presence of all these elements; most other proceedings based upon misrepresentations, at least in equity or under equitable pleadings, may be satisfied without the second element, and one proceeding, rescission, may in certain cases be satisfied though both the second and, so far as damage is concerned, the fifth be wanting." 1 Bigelow on Fraud [1888 Ed.], 465, 466.

The same rule is announced in *Derry v. Peek*, L. R. 14 App. Cases, 374, in which Lord HERSCHELL said: "I think the authorities establish the following propositions: *First*, in order to sustain an action of deceit, there must be proof of fraud, and nothing short of that will suffice. *Secondly*, fraud is proved when it is shown that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly careless whether it be true or false. Although I have treated the second and third as distinct cases, I think the third is but an instance of the second, for one who makes a statement under such circumstances can have no real belief in the truth of what he states. To prevent a false statement being fraudulent there must, I think, always be an honest belief in its truth. And this probably covers the whole ground, for one who knowingly alleges that which is false has obviously no such honest belief. *Thirdly*, if fraud be proved, the motive of the person guilty of it is immaterial. It matters not that there was no intention to cheat or injure the person to whom the statement was made."

II. But it is contended by counsel for appellants that there is no evidence in this case of any intention on their part that the statement on the bonds that they were first mortgage bonds should be acted upon by any person ignorant of the facts. This contention is predi-

cated in part on the fact that plaintiff acquired the
bonds from a third party, and not directly from the
party who issued the bonds. In such circumstances it
is claimed that it devolves upon the plaintiff to estab-
lish such intent by affirmative proof.

What more affirmative proof of an intention on the
part of defendants that the statement on the bonds that
they were first mortgage bonds should be acted upon
by any persons ignorant of the facts, than the state-
ment itself, we are unable to perceive. If such was not
the purpose, it naturally suggests itself, what was?
Why print that upon the face of the bonds which
defendants knew to be untrue, if not for the purpose of
inducing persons not knowing the truth, to believe that
they were desirable securities, and to invest in them?
That it was the intention of defendants that these
bonds should be negotiated and sold in the commercial
markets of the world as first mortgage debenture
bonds, and that plaintiff by reason thereof was in-
duced to take them as collateral security and to part
with its money, is beyond any question. No one would
have purchased them had it been known that they were
not first mortgage bonds.

They were negotiable in form, due five years from
date and have the printed indorsement for negotiation
on the back of each one of them. They were turned
over to the payee, the Winter Investment Company,
October 8, 1891, on a proposition by that company to
take the whole issue of $1,000,000 at ninety-five cents
on the dollar, payable in the assumption of $410,000,
the bonded debt then on the ground, together with
$16,000 accumulated interest, fifty per cent of the
capital stock for redemption of the same amounting to
$500,000, and the balance to be paid over to the
treasury of the company.

Nothing was paid on the bonds by the Winner

Investment Company at the time of their delivery. After the bonds were received by that company it sold a large number of them in commercial markets.

On the fourth of October, 1890, a special meeting of the board of directors of the New Hampshire Investment Company was called for October 15, 1890, "to consider the report of the Winner Investment Company, to be presented concerning the application of the proceeds of bonds as stipulated by agreement of sale recorded October 8, 1889, in the minutes of the meeting then held."

The meeting was held at the appointed time and the report made, which shows the amount of bonds sold, amount derived from such sale, the application of $23,181.45 on the Lumas H. Holmes bonds including interest, leaving a balance due on those bonds of $305,525, which were secured by a first mortgage on the land of the company, which was to be paid by the Winner Investment Company on the sale of the bonds in its hands. All of the defendants were present at this meeting and participated therein; and on motion of defendant Perkins, seconded by defendant Bunker, it was unanimously decided that the report be received as satisfactory and spread upon the records.

It thus seems clear that it was the intention of these defendants that the bonds should be negotiated before or regardless of the time of payment of the L. H. Holmes deed of trust, and that they should be sold by the Winner Investment Company as first mortgage bonds.

It was said in *Clark v. Edgar*, 12 Mo. App. *loc. cit.* 353, s. c., 84 Mo. 111, that, "First mortgage bonds mean bonds secured by first mortgage. The directors of this company knew that these bonds were secured by a second mortgage, and not by a first mortgage. The bonds were, by their nature, calculated to find a

market anywhere in civilization, no matter how distant from the site of the property by which they were secured. The printed statement that they were first mortgage bonds was an assertion by the officers and directors of the company that they were so; and men of ordinary prudence, on the faith of that statement, might well abstain from an investigation of the fact."

It having been shown that defendants knew, at the time of their issue that the $1,000,000 of bonds were not at that time, nor at the time of the acquisition of $4,000 of said bonds by plaintiff, first mortgage bonds, and that the statement on the face of them to that effect was false, proof of the fraudulent intent must be regarded as conclusive. *Cowley v. Smyth*, 46 N. J. L. 380.

In *Dulaney v. Rogers*, 64 Mo. 204, it was said: "The gist of an action founded on fraudulent representations, when damage results, is the fraud of defendants, and when it appears that a representation is made which is known to be false at the time it is made, and the person to whom it is made relies upon it and is deceived thereby to his injury, an action lies against the party making it. Whenever the above facts are proven the fraud necessary to give a right of action appears, and the intention to deceive is sufficiently shown."

So in *Snyder v. Free*, 114 Mo. 376, SHERWOOD, J., in delivering the opinion of the court, quotes with approval from *Babcock v. Eckler*, 24 N. Y. 623, the following: "If the necessary consequence of a conceded transaction was defrauding another, then, as a party must be presumed to have foreseen and intended the necessary consequences of his own act, the transaction itself is conclusive evidence of a fraudulent intent; for a party can not be permitted to say that he did not

intend the necessary consequence of his voluntary act."

The statement on the face of the bonds was a part thereof, and intended by defendants to be acted upon as true by all persons who would purchase them, whether directly or indirectly, and any person who purchased them in good faith before maturity, relying upon the statement that they were first mortgage bonds, and who may have been injured thereby, may hold the defendants responsible for the actual damages sustained. *Clark v. Edgar, supra; Bruff v. Mali,* 36 N. Y. 200; *Morgan v. Skiddy,* 62 N. Y. 319; *Bartholomew v. Bentley et al.,* 15 Ohio St. 659; *Clarke v. Dickson,* 6 C. B. (N. S.) 453; *Railroad v. Kisch,* L. R. 2 Eng. & I. App. 100; *Nash. v. Minn. Title Co.,* 159 Mass. 440.

It follows that no error was committed in refusing the tenth instruction asked by defendants.

III.   It is again insisted that error was committed in giving the third, fourth, and sixth instructions upon the part of plaintiffs, because of the want of evidence upon which to predicate them.   That question was in effect ruled adversely to this contention by what was said in the second paragraph of this opinion, and it is not thought necessary to say more with respect thereto.

IV.   It is also claimed that the court erred in giving the fifth instruction on behalf of plaintiff.   The last half of it is especially criticised, but when the instruction is taken as a whole as it must be, we think the criticism unwarranted.

V.   Plaintiff's seventh instruction is subject to verbal criticism, but when taken in connection with all other instructions given in the case, could not have misled the jury, or prejudiced the rights of defendants.

VI.   Instructions 13 and 14 were properly refused for reasons already stated.

Vol. 139 mo—42

VII.  It is argued by defendants that there was no proof that plaintiff had sustained any damages, and therefore instructions numbered 7, 8, and 9, asked by them, in the nature of demurrers to the evidence, should have been given.  It may be conceded that there can be no recovery in an action for fraud unless it produces actual injury.  "Fraud is an odious tort, and when actual injury proceeds from it damages are allowed as for other tortious injuries.  It is necessary to a cause of action for fraud that it produce actual injury; damage is the gist of the action.  In other words, fraud and damage must concur to give a cause of action."  3 Suth. Dam. [2 Ed.], sec. 1163.

In support of their contention appellants' counsel quote from plaintiff's petition the following which they say the several answers admit to be true, to wit:  "That the lands and lots described in and conveyed by said deed of trust made by said New Hampshire Investment Company were worth, during the years of 1889, 1890, and 1891, more than the aggregate sum of one million dollars, and were an ample security for the payment of said one million dollars of bonds," and there stop.  But the petition continues—"if the same had been first mortgage bonds, and that during said last years the said bonds had a market value as such first mortgage bonds equal to the par value thereof."  The petition can not, therefore, be construed as alleging that the lands and town lots conveyed by the deed of trust by the New Hampshire Investment Company were worth during said years of 1889, 1890, and 1891 more than the aggregate sum of $1,000,000, and were ample security for the payment of said $1,000,000 of bonds.

Plaintiff's damages must be measured by the extent of the injury sustained.  If it sustained no injury, it is not entitled to damages, but this was a question for the jury under the evidence.

At the time plaintiff received the bonds their market value was about their face value. They were received as collateral security for $4,000, and if they had been as represented upon their face, that is, first mortgage bonds, they would have been worth that sum, but, as it turned out, they were worthless. The bonds secured by the Holmes deed of trust became delinquent, judgment foreclosing that deed of trust was rendered in the Federal court, third parties become the purchasers of the property, by which the security was entirely lost to the holders of the second mortgage bonds. In such circumstances the measure of damages was the difference between the bonds if they had been as represented upon their face, and their value with the prior incumbrance on the lands of the company. 1 Bigelow on Fraud [1888 Ed], pp. 627 and 628; *Caldwell v. Henry*, 76 Mo. 254. Plaintiff's tenth, and defendant's third instruction, with respect to this branch of the case, are in accordance with the rule herein announced and contain a correct presentation of the law upon the measure of damages. The jury under the instructions found adversely to this contention and there was an abundance of evidence to fully justify them in so finding.

VIII. Other errors are assigned by defendants which have not been overlooked, but which have in effect been ruled upon, or which would not justify a reversal of the judgment.

IX. A final contention is that the case of *Clark v. Edgar, supra*, should be overruled in so far as it furnishes a basis of this action, but we are not inclined to concur in this view for the reason that it is not only supported by authority, but by the highest principles of justice.

No one should be permitted to escape personal liability, for fraud practiced by himself, or in connec-

tion with others upon another in his or their official character of president, director, or secretary of a private corporation upon the ground that they were acting for the corporation. To claim exemption on the ground of official responsibility, or that the fraud was committed for the benefit of the corporation, is equivalent to claiming that the corporation is liable for the fraud of its officers, and the officers themselves not liable. As was said in *Hempfling v. Burr*, 59 Mich. 294, "this is a very singular result, and one which is too unreasonable to bear consideration." *Hubbard v. Weare*, 79 Iowa, 678; 1 Mor. on Priv. Corp. [2 Ed.], secs. 573, 574. See, also, *Greer v. Bank*, 128 Mo. *loc. cit.* 574.

From these considerations it follows that the judgment must be affirmed. It is so ordered. GANTT, P. J., and SHERWOOD, J., concur.