O. L. ROBINETT, Doing Business under the Name,
MANSFIELD PRODUCE COMPANY, Respond-
ent, v. BANK OF WILLOW SPRINGS AND J.
B. THOMAS, Appellants.

**Springfield Court of Appeals, February 10, 1914.**

1. **BANKS AND BANKING: Drafts: Agreement to Apply Fund
   to Certain Debt: Fraud.** Where a bank agreed in writing to
   follow instructions of the drawer of a draft to apply a certain
   part of the money, if recovered on the draft, to the payment
   of a debt due plaintiff by the drawer, the bank was properly
   allowed to show that such agreement on its part was pro-
   cured by plaintiff's fraudulent representations.

2. ———: **Checks and Drafts: Certifying: Liability of Bank.**
   When a bank certifies a check or draft or other order, it be-
   comes liable whether its customer has funds or not.

3. ———: ———: **Acceptance by Bank: Fraud as a Defense.**
   Where a bank accepts an order, though the drawer had no
   funds to meet it, misrepresentations and fraud on the part of
   the payee of the order afford a complete defense to an action
   on the order.

4. ———: ———: ———: **Fraud and Misrepresentations: Failure
   of Consideration.** Defendant bank accepted an order in favor
   of plaintiff drawn by a depositor who was indebted to the
   bank, plaintiff misrepresenting to the bank that he controlled
   all claims against the depositor and would prevent bank-
   ruptcy proceedings. Immediately thereafter bankruptcy pro-
   ceedings were instituted. *Held*, there was a failure of considera-
   tion for the acceptance.

Appeal from Howell County Circuit Court.—*Hon. W.
N. Evans*, Judge.

REVERSED AND REMANDED.

*N. B. Wilkinson,* and *Green, Wayland & Green,*
for appellants.

The court erred in sustaining demurrer to defend-
ant's answer. A failure of plaintiff to do what he

promised to do as an inducement to get an approval of
the order given by Daniels, was a failure of considera-
tion, and that a consideration from plaintiff to the
bank was essential to make a legal contract. The in-
dorsement of the president of the bank was procured
by fraud and sharp practice, and that fraud vitiates the
contract.

*Perry T. Allen* and *N. J. Craig,* for respondent.

(1) A drawee admits by the acceptance of a draft
or bill of exchange that he has funds in his hands to
pay the draft or bill, and is not permitted to deny this
fact. Tiedeman on Paper, p. 230; 4 Am. & Eng. Ency.,
p. 229; Nowak v. Excelsior Stone Co., 98 Ill. 307; Hol-
lister v. V. S. Hopkins, 13th N. Y. 210; Grant v. Elliot,
7 Wend. N. Y. 227; Trusley v. Sumrall, 2 Pet (U. S.)
169, 183; 8 Curt Dec. 68, 27, L. Ed. 386. The latter
case holding that acceptance binds acceptor even if he
had no funds of the drawer in his hands, and even
though he knew such fact. (2) No consideration is
required for the acceptance of a draft, bill of exchange,
or an order for the payment of money by the drawee.
It does not lie in the mouth of the drawee to question
the transaction between the drawer and the payee.
When the drawee accepts the order or bill of exchange
he becomes the principal debtor and the drawer is re-
leased in his obligation to the payee. Bank of Indian
Territory v. First Nat. Bank, 109 Mo. App. 665.

FARRINGTON, J.—This action was instituted in
the circuit court of Howell county by plaintiff filing a
petition in two counts. As the question to be deter-
mined here relates to the sufficiency of defendant's an-
swer to the second count, it is deemed essential to set
forth much of the pleadings. The petition is, in part,
as follows:

"Plaintiff states that at all times hereinafter men-
tioned he was engaged in business of buying and sell-

ing produce at Mansfield, Missouri, under the style of the Mansfield Produce Company. That the defendant, the Bank of Willow Springs, is a corporation organized and existing under the laws of the State of Missouri with capacity to sue and be sued as such.

"Plaintiff for the second cause of action states that on the 16th day of November, 1912, the Daniels Commission Company of Willow Springs made and delivered to plaintiff an order in writing authorizing and directing the defendant to pay the plaintiff the sum of $650 out of the proceeds of a certain draft of the amount of $900 drawn on Galligher Bros. of Chicago, Ill., which said Daniels Commission Company had deposited with the defendants on the 15th day of November, 1912, a copy of which order is filed herewith and marked exhibit A.

"Plaintiff states that defendants accepted said order in writing and agreed to pay said amount of $650 to plaintiff upon the receipt of the return from the said $900 draft.

"Plaintiff states that defendants have long since received returns on the aforesaid $900 draft, but have failed and refused to pay plaintiff the amount of said order.

"Wherefore, plaintiff prays judgment in the sum of $600 with interest at six per cent from the 27th day of November, 1912, together with his costs in this behalf expended."

The order sued on is as follows:

"November 16, 1912.

"I hereby authorize the Bank of Willow Springs to pay Mansfield Produce Co. $650 out of $900 draft deposited with the Bank of Willow Springs, November 15, 1912. In case of nonpayment of draft the proceeds of nineteen barrels of turkeys to be turned over to Mansfield Produce Co. Produce covered by said draft

consisting of nineteen barrels of turkeys and thirty-five cases of eggs and butter.

> "DANIELS COMMISSION CO.,
>> "C. F. DANIELS.

"We will follow the instructions given us.

>> "J. B. THOMAS, President."

The answer filed by defendant is as follows:

"Defendant for its amended answer to the second count of plaintiff's petition admits that the Daniels Commission Company of Willow Springs, Missouri, made and delivered to plaintiff an order in writing requesting the defendant to pay to plaintiff the sum of $650 out of the proceeds of a certain draft of $900 drawn on Galligher Brothers at Chicago, Illinois, and that defendant agreed to pay plaintiff if it collected such draft.

"Defendant further states that at the time such order was given upon defendant and indorsed by it as stated in plaintiff's petition, the Daniels Commission Company was doing a large commission business in buying and selling country produce in Willow Springs, consisting of eggs, poultry, butter, and other farm products, and that at such time such company had a great many shipments of produce, among which was several carload lots of eggs and chickens in various markets of the country from which they had not received any return and that such outstanding collections amounted to several thousand dollars.

"Defendant further states that at the time such order was given by the Daniels Commission Company and indorsed by defendant such commission company was indebted to defendant bank in the sum of several thousand dollars for advances made on shipments of produce and loans and that the $900 draft described in the order herein sued upon had been deposited by the Daniels Commission Company with defendant attached to the express shipping bill and receipt, and defendant bank at such time had paid the Daniels Com-

mission Company the sum of $900 upon such draft and that thereupon and thereafter such draft and the proceeds therefrom was the sole property of the defendant and that the Daniels Commission Company had no right, title or interest in the same or any part of it, and upon the day such order was given, plaintiff with his attorney, Mr. Craig, were at Willow Springs for the purpose of collecting from the Daniels Commission Company the sum of $650 which was claimed by them to be due for produce shipped to the Daniels Commission Company by plaintiff and that plaintiff at such time had with him the sheriff of Howell county, Missouri, with an attachment writ for the purpose and with the intention of attaching the property of the Daniels Commission Company at Willow Springs, to force the collection of plaintiff's claim; that after a conference between plaintiff and the officers of the Daniels Commission Company and the president of the defendant bank and upon the statement of Mr. Craig, representing the plaintiff herein, that he had in his possession and under his control practically all the outstanding claims against the Daniels Commission Company, and that if the Daniels Commission Company would give an order upon the defendant bank for the payment of the claim of plaintiff and the defendant bank would accept such order and agree to pay the same, they, the plaintiff herein and Mr. Craig, would guarantee them that there would be no proceeding in bankruptcy against the Daniels Commission Company and that interests of the defendant bank as well as that of the Daniels Commission Company would be protected by them and all parties and interests saved from any financial loss; that thereupon and because of such promise made by said plaintiff and his attorney and by reason of the further fact that the Daniels Commission Company was indebted to the defendant bank in the sum of several thousand dollars, and the further fact that there were outstanding and uncollected bills due the

defendant for prior advancement on shipment of carload lots of produce by the Daniels Commission Company, defendant was greatly interested in maintaining the solvency of such company in order that it might collect for such shipments aforesaid, and relying upon the statements of the attorney of plaintiff, made in the presence of plaintiff and consented to by him that if defendant would pay plaintiff's claim the Daniels Commission Company would be saved any bankruptcy proceedings, and for no other reason, defendant agreed to pay the claim of plaintiff out of its own funds and not out of any funds of the Daniels Commission Company, provided it received returns from such draft, defendant alleging that at such time it had no funds in its possession belonging to the Daniels Commission Company from which such claim could be paid, the Daniels Commission Company executed and delivered such order, and that it was upon such promise and agreement so made by plaintiff and his attorney as aforesaid that the defendant by its president, J. B. Thomas, was induced to and did indorse such order and agreed to pay plaintiff this claim out of its own funds.

"Defendant further states that the statements so made by Mr. Craig, the attorney for plaintiff, in his presence with his assent, that he controlled all the claims outstanding and would prevent any proceedings in bankruptcy to be taken against the Daniels Commission Company, were false and untrue, and were known at the time by plaintiff and its attorney to be false and untrue, and that they were made for the sole purpose of perpetrating a fraud upon the defendant bank, and that such order was given and indorsed by defendant bank with the belief that such statements were true and that it would not have been made or indorsed except for such promise made by the plaintiff as aforesaid.

"Defendant further states that immediately upon procuring such order from the Daniels Commission Company, which occurred on Sunday, November 17, 1912, and having it indorsed by the defendant, creditors of such commission company filed involuntary bankruptcy proceedings against such company in the federal court at Springfield, Missouri, and such company was declared bankrupt, tying up all outstanding credits due the Daniels Commission Company and this defendant from drafts it had purchased from the Daniels Commission Company, causing the total failure of the Daniels Commission Company and preventing the bank, this defendant, from collecting the outstanding sight drafts due it from shipments theretofore made and causing it to lose several thousand dollars.

"Wherefore, defendant says that such order of the Daniels Commission Company and its indorsement by the defendant were procured through the fraud of plaintiff as aforesaid and that the execution of such order and its indorsement by the bank were and are wholly without any consideration. Wherefore, defendant asks judgment against plaintiff with its costs."

The plaintiff thereupon filed the following demurrer:

"Now comes the plaintiff in the above-entitled cause and demurs to the defendant's amended answer to the second count in plaintiff's petition for the following reasons, to-wit:

"First—Because the matters and things set forth in defendant's said amended answer, if true, do not constitute any defense, either in law or equity, to plaintiff's second count in the petition.

"Second—For the reason that defendant's said answer does not state facts sufficient to constitute any defense at law or in equity to the second count in plaintiff's petition."

This demurrer was by the court sustained. Defendants refusing to plead further, judgment was entered against them in the sum of $663.

By stipulation between the attorneys it is agreed that the only question to be determined on this appeal is concerning the action of the circuit court in sustaining the demurrer to the answer.

Appellants in their brief rely on the answer as stating a defense, claiming that it is a sufficient plea of fraud to raise an issue of fact as to the validity of the order and indorsement.

Respondent contends that since the answer admitted the execution of the instrument sued on, appellants cannot deny that the fund derived from the draft or property was at the time of the execution of the instrument sued on the property of the Daniels Commission Company, and that since the answer does this it is inconsistent and subject to demurrer and that the demurrer was therefore properly sustained.

We cannot agree with respondent in this contention for the reason that the instrument itself is not conclusive evidence that the fund to be paid over is that of the Daniels Commission Company. It merely authorized the appellant bank to pay this fund. It is not in the language of a demand or an order, but is merely an expression of willingness to allow the bank to use this money on this payment. Such order is not inconsistent with the facts set up in the answer that the produce had been shipped and a draft drawn and deposited with the bank and that the bank had advanced at that time the full amount on the shipment. The indorsement of the bank would no more than show a willingness on its part to treat $650 of the amount received as a payment to be made to the respondent. The demurrer admitted all facts well pleaded in the answer, to-wit: That the indorsement of this instrument was procured on representations of certain facts as existing, and that these facts did not exist; that

when the representations were made the respondent knew they were not true, and that relying on these representations the indorsement was made, and that on such representations the appellant bank permitted itself to become liable to the respondent in the sum of $650. It is the indorsement of the bank on this instrument that respondent's cause of action is based upon, and whether this instrument was designed to cause funds to be paid belonging to the Daniels Commission Company or funds belonging to the bank is immaterial if the procurement of the indorsement was by fraud. As is held in the authorities cited by respondent, when a bank certifies a check or draft or other order, it becomes liable regardless of whether its customer has funds or not. In our judgment, if the facts alleged in the answer can be proven, the indorsement of the appellant bank would be shown to have been procured by fraud, and as fraud vitiates all contracts, there would be no liability. [See, Bank of Atchison County v. Byers, 139 Mo. 627, 41 S. W. 325; Live Stock Remedy Co. v. White, 90 Mo. App. l. c. 502.]

The answer in this case, besides the charge of fraud, alleges that the sole consideration moving from the plaintiff to the defendant bank was the promise and agreement that plaintiff would prevent bankruptcy proceedings against the Daniels Commission Company, and that the defendant bank, being also a creditor of that company, was greatly interested in maintaining it as a going concern. It further alleges that immediately after the plaintiff procured the signature to the written order from the bank, bankruptcy proceedings were begun which resulted in an adjudication against the company. The answer, therefore, clearly averred a failure of consideration. We are not called upon in this case to decide whether a promise by a creditor to an interested third party of forbearance to institute bankruptcy proceedings or to prevent bankruptcy proceedings being instituted against their

common debtor is such a consideration as will support an agreement by the interested third party to pay the debt to the creditor. The answer here treats such promise as a sufficient consideration, and sufficiently pleads failure thereof.

It follows that the judgment should be reversed and the cause remanded. It is so ordered. *Robertson, P. J.,* and *Sturgis, J.,* concur.

